**William C. POWELL,**
**Plaintiff/Appellee,**

v.

**Thomas J. MIKULECKY, George Oates,**
**Ruth Stephens and Wendall Gilliam,**
**Defendants/Appellants.**

**No. 88–1907.**

United States Court of Appeals,
Tenth Circuit.

Dec. 15, 1989.

Jon B. Comstock of Rosenstein, Fist & Ringold, Tulsa, Okl. (Jerry A. Richardson, with him on the brief) for defendants/appellants.

M. Claire McNearney, of Chapell, Wilkinson, Riggs & Abney, Tulsa, Okl., (Bill M. Shaw was on the brief) for plaintiff/appellee.

Before HOLLOWAY Chief Judge,
and HENLEY * and EBEL, Circuit
Judges.

EBEL, Circuit Judge.

Plaintiff was discharged from his position as a full-time fire fighter. He then brought suit alleging, among other things, that defendants violated his right not to be deprived of his property interest in employment without due process because they did not accord him the pretermination hearing he believed he was entitled to under *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494

---

\* The Honorable J. Smith Henley, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

(1985). Defendants moved for summary judgment, claiming that they were protected from suit by qualified immunity. The district court denied that motion and defendants appealed. Because we believe defendants' actions were shielded by qualified immunity, and that they are entitled to summary judgment on that issue, we reverse.

## BACKGROUND

The following facts are not controverted. Plaintiff William C. Powell was employed as a regular full-time fire fighter for the City of Bartlesville, Oklahoma. He was also an active member of Local 2721 of the International Association of Fire Fighters ("the Union"). Upon returning from vacation in June 1986, defendant George Oates, the Bartlesville Fire Chief, was informed that Powell and other members of the Union had met with Bill Eden, the Fire Chief of Ramona, Oklahoma, and with Harold C. Young, the Assistant Fire Chief of Ochelata, Oklahoma. Oates contacted Eden and Young to discuss those meetings, and was told that Powell had requested that they keep the Ramona and Ochelata Fire Departments from responding to any calls for mutual aid from the City of Bartlesville until all off-duty Bartlesville firemen are first called back to work for overtime wages. Oates considered Powell's conduct an improper attempt to interfere with the City of Bartlesville's authority to establish a mutual aid policy, endangering the safety of the citizens of Bartlesville.

Oates advised defendant Mikulecky, the Bartlesville City Manager, and defendant Ruth Stephens, the Personnel Director for the City of Bartlesville, of his investigation into Powell's conduct and recommended that Powell be terminated.[1] Oates then conferred with Steve Andrew, Bartlesville's labor attorney, to determine whether there was "just cause" to terminate Powell and to determine the proper procedure to follow. After conferring with Andrew, Oates obtained conditional authorization from Mikulecky to discharge Powell if Powell admitted discussing mutual aid to the City of Bartlesville with Eden and Young. Dist. Ct.Op. at 2–3.

On June 24, 1986, Oates conferred with Powell following a negotiation session between representatives of the City of Bartlesville and the Union. Oates asked Powell if he had met with the fire chiefs of Ramona and Ochelata while Oates was on vacation. Powell said "yes." Oates asked Powell if Powell and others had asked them not to sign a mutual aid agreement. Powell responded: "in the form that we had heard it would be, yes." R.Doc. 48 at 8 (exhibit G. at 17) (Defendants' brief in support of their motion for summary judgment); R.Doc. 61 at 5 (Plaintiff's response to defendants' motion for summary judgment). At that point, Oates informed Powell that he was discharged, effective immediately. R.Doc. 48 at 9 (Defendants' brief in support of their motion for summary judgment); R.Doc. 61 at 5 (Plaintiff's response).[2] Oates asked Powell if anyone else was involved. Powell responded that he was not going to say anything else until he spoke with his attorney. Appellee's Br. at 11.

Pursuant to a collective bargaining agreement between the City of Bartlesville and the Union, the Union filed a grievance on behalf of Powell on June 25, 1986. After defendants Oates and Mikulecky denied

---

**1.** Plaintiff has also named Wendall Gilliam, Bartlesville's Assistant Fire Chief, as a defendant to this action. Plaintiff alleges, and defendants deny, that Gilliam played a role in Oates' discharge of Powell. *See* R.Doc. 48 at 11 (Defendants' Brief in Support of their Motion for Summary Judgment); R.Doc. 61 at 8 (Plaintiff's Response to Defendants' Motion for Summary Judgment). However, we need not resolve this dispute because, as discussed below, we hold that the defendants' discharge of Powell was protected by qualified immunity.

**2.** In his brief, Powell "denies that he asked Ramona's Fire Chief and Ochelata's Assistant Fire Chief not to sign the mutual aid agreement which was proposed by the City of Bartlesville." Appellee's Br. at pg. 6. However, in his response to defendants motion for summary judgment, Powell admitted that he responded to Oates' questions as described above. R.Doc. 61 at 5 (Plaintiff's response to defendants' motion for summary judgment).

Powell's grievance, the matter was submitted to arbitration.

According to the terms of the collective bargaining agreement, once a neutral arbitrator is selected, a hearing has to be called within ten days of the arbitrator's appointment. Both the Union and the Employer must receive written notice of the time and place of the hearing at least seven days in advance. Although the hearing is to be informal, all relevant documentary evidence may be received into evidence. Additionally, the arbitrator has the power to compel the attendance of witnesses or the production of any other relevant evidence.

On November 10, 1986, after conducting a hearing in the manner described above, the arbitrator sustained Powell's grievance, finding that Powell had been dismissed without "just cause" as required under his employment contract. R.Doc. 11 (exhibit A at 9–10). The arbitrator ordered that Powell be reinstated to his former position with full back pay and benefits. The City complied with that order. R.Doc. 11, 17.

Powell then brought this action under 42 U.S.C. § 1983. Powell alleged that defendants, all employees of the City of Bartlesville acting under color of state law and within the scope of their employment, deprived him of property and liberty without due process of law and violated his First Amendment rights of freedom of speech and freedom of association. The district court granted defendants' motions for summary judgment on Powell's First Amendment claims and his claim of deprivation of a liberty interest. However, the district court refused to grant summary judgment on Powell's claim of deprivation of a property interest without due process and defendants' qualified immunity defense to that claim. Defendants now appeal the district court's order denying their motion for summary judgment on the ground of qualified immunity.

## DISCUSSION

### 1. *Appealability of Denial of Motion for Summary Judgment Based on Qualified Immunity*

Although an order denying summary judgment is not generally appealable as a final judgment, the Supreme Court has explained that the entitlement provided to the government by qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.... Accordingly, we hold that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 12 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 530, 105 S.Ct. 2806, 2815, 2817, 86 L.Ed.2d 411 (1985) (emphasis in original); *see also Eastwood v. Dept. of Corrections of the State of Oklahoma*, 846 F.2d 627, 629 (10th Cir. 1988). Thus, we proceed to decide whether defendants' motion was properly denied.

### 2. *Summary Judgment Standards and Procedures When Qualified Immunity is Raised as a Defense*

"In an attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interference in the performance of their duties as a result of baseless claims, the Court [has] adopted an objective test to determine whether the doctrine of qualified immunity applies." *Pueblo Neighborhood Health Centers, Inc., v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). The test for qualified immunity is whether defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*,

475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Because of the important values protected by qualified immunity, the procedures to be followed when this particular affirmative defense is raised differ from those applicable to most other affirmative defenses. Once a defendant raises the defense of qualified immunity as a defense to an action, "[t]he plaintiff carries the burden of convincing the court that the law was clearly established." *Pueblo Neighborhood,* 847 F.2d at 645.[3] The plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Id.* at 646. Only after plaintiff has shown a violation of a clearly established right does the defendant assume the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity. *See id.* Thus, unless and until the plaintiff is able to make the required showing that defendant's conduct violated a "clearly established" right, the government official is properly spared the burden and expense of proceeding any further.

The "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Pueblo Neighborhood,* 847 F.2d at 645. The Supreme Court has cautioned that the test for qualified immunity should not be applied in such a general way as to render the qualified immunity defense unavailable as a practical matter. "The contours of the right [that has allegedly been violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). In this case, the only relevant question is whether the "contours" of the pretermina-

tion procedural due process rights announced in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and applied in lower court cases interpreting that decision, were "sufficiently clear" that a reasonable official would understand that terminating Powell without a more elaborate hearing than that which he received violated those procedural rights.

The district court held that "at the time of plaintiff's temporary dismissal, it had been 'clearly established' that an employee who possesses a property right in his employment has the right to procedural due process *prior* to termination, to-wit: notice and an opportunity to present his side of the story." Dist.Ct.Op. at 6 (emphasis in original). While we agree with the district court's description of Powell's due process rights under *Loudermill,* we do not believe that Powell has satisfied his burden of showing that the defendants' conduct violated the "clearly established" contours of those due process rights.

We note that the district court, in refusing to grant summary judgment on the qualified immunity claim, stated in general terms that there were material "controverted facts." Dist.Ct.Op. at 7. However, the district court did not indicate with any specificity what material facts it believed were in dispute. In his brief, Powell argues that the factual issue in dispute is "Whether Defendants' Reliance Upon Advice of Counsel That The Procedures Utilized To Dismiss Powell Were Constitutionally Adequate Was Objectively Legally Reasonable." Appellee's Br. 19. As stated, this is not a factual dispute, but rather is a legal question of whether counsel's advise was objectively reasonable in light of the prevailing law. In any event, that is not a material issue because the existence of qualified immunity in this case does not turn upon the quality of defendant's legal advise, nor upon an inquiry as to whether

---

**3.** The court in *Pueblo Neighborhood* relied on the earlier decision of this court in *Lutz v. Weld County School Dist No. 6,* 784 F.2d 340 (10th Cir.1986). "'A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.'" *Id.* at 343 (quoting *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1983)).

the defendants relied upon that advice. *See Harlow*, 457 U.S. at 815–19, 102 S.Ct. at 2736–39.

Rather, as discussed below, the question of qualified immunity in this case turns merely upon comparing the pretermination hearing that was, in fact, accorded to the plaintiff against the kind of pretermination hearing that plaintiff was entitled to under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1984). Because we hold that the plaintiff has not carried his burden of showing that the pretermination hearing he was accorded violated "clearly established . . . constitutional rights of which a reasonable person would have known," *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (1982), the defendants are entitled to judgment as a matter of law on the issue of qualified immunity.

### 3. *Powell's Due Process Rights Under Loudermill*

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), James Loudermill, a security guard employed by the Cleveland, Ohio Board of Education, was fired for dishonesty in filling out his job application. *Id.* at 535, 105 S.Ct. at 1489. He was not given any opportunity to respond to the dishonesty charge or to challenge his dismissal prior to his termination. *Id.* Under section 124.34 of Ohio law, Loudermill could be terminated only for cause and was entitled to administrative review of the dismissal. *Id.* After losing his appeal to the Cleveland Civil Service Commission, Loudermill filed a suit in federal district court challenging the constitutionality of § 124.34 because it did not provide employees the opportunity to respond to charges brought against them prior to discharge. *Id.* at 536, 105 S.Ct. at 1490. The district court dismissed for failure to state a claim on which relief could be granted. *Id.* A divided panel of the Court of Appeals for the Sixth Circuit reversed, concluding that a pretermination hearing was required to satisfy due process. *Id.* at 537, 105 S.Ct. at 1490.

The Supreme Court affirmed the Sixth Circuit and held that "a balancing of the competing interests at stake" made evident the need for "some form of pretermination hearing." *Id.* at 542, 105 S.Ct. at 1493. The *Loudermill* Court considered the following competing interests of Loudermill and the Board of Education in arriving at its decision: (1) the employee's interest in retaining his employment; (2) the government's interest in "the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens"; (3) "and the risk of an erroneous termination" of an employee. *Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493–94.

Based on these competing interests, the *Loudermill* Court held that a "hearing" was necessary prior to termination of a public employee, though not an elaborate proceeding. *Id.* at 545, 105 S.Ct. at 1495. In describing the type of pretermination hearing required, the Court was careful to point out that "the pretermination hearing need not definitively resolve the propriety of the discharge." *Id.* Rather, the central purpose of the pretermination hearing is merely to serve as "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495.

The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate an employee. The idea of conducting two identical hearings runs counter to traditional principles of adjudication.

Rather than prescribe a particular format for pretermination hearings that must be followed in each instance, the *Loudermill* Court emphasized that "[t]he essential requirements of due process ... are notice and an opportunity to respond" and that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* (citations omitted).

The pretermination procedure afforded Powell by defendants accorded with the requirements established in *Loudermill*. Powell received oral notice of the charge against him when Oates confronted him face-to-face after the June 24, 1986, negotiation meeting between the City and the Union. Oates asked Powell if he had met with the fire chiefs of Ramona and Ochelata while Oates was gone. Powell said "yes." Oates asked Powell if Powell had asked them not to sign a mutual aid agreement. Powell responded: "in the form that we had heard it would be, yes." That conversation was, itself, the notification of the charges against him. At that time, Powell had an opportunity to rebut that charge but chose instead to admit to it.

Powell alleges that he was not given adequate notice of the investigation Oates had conducted or of the evidence that had been gathered against him. However, we believe that Oates' questions to Powell provided Powell with sufficient notice of the allegations against him. When Oates asked Powell if he had met with the fire officials from the neighboring towns and encouraged them not to sign the proposed mutual aid agreements, that was adequate to put Powell on notice that Oates was concerned with his actions. Although Oates did not tell Powell the basis for his suspicions, Powell does not allege, nor is there evidence in the record indicating, that Powell could not have asked Oates for the basis of his questioning. In any event, because Powell admitted to the allegations, the basis for Oates' questions became irrelevant. Nothing in *Loudermill* suggests, nor do we hold, that a public employee is entitled to some type of "pre-notification notice" of the charges against her or him. Likewise, *Loudermill* does not imply that, in conducting the pretermination hearing, there must be a delay between the "notice" and the "opportunity to respond" accorded to the public employee.

Powell also argues that he was not afforded an opportunity to explain his side of the story relating to the meeting with Chiefs Eden and Young. As an initial matter, we note that it was Powell who ended the conversation with Oates once Oates had informed him that he was going to be terminated. Powell refused to respond to Oates' further inquiries about who else might have been involved until he talked with his attorney. Appellee's Br. at 11. Thus, Powell at that time chose not to exercise his opportunity to attempt to persuade Oates not to terminate him.

More importantly, once Powell admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination. As discussed above, the primary purpose of the due process rights established in *Loudermill* is to guard against the erroneous termination of public employees. In this case, because Powell admitted that he requested that Eden and Young not enter into a proposed mutual aid agreement with the City of Bartlesville, the pretermination hearing afforded Powell by Oates was ample to ensure against a mistaken decision to discharge Powell.

Because the *Loudermill* Court's holding concerning the adequacy of a minimal pretermination hearing rested "in part on the provisions in Ohio law for a full post-termination hearing," *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495, we evaluate briefly the post-termination procedures in this case. Pursuant to the collective bargaining agreement, Powell's claim of unlawful discharge was submitted to binding arbitration. Powell had a chance to call witnesses and introduce evidence on his behalf at that

arbitration. That arbitration was a sufficient protection against a wrongful or erroneous discharge is demonstrated by the arbitrator's decision ordering Powell's reinstatement with full back pay. Therefore, like the *Loudermill* Court, we conclude that in this case "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination procedures." *Loudermill*, 470 U.S. at 547–48, 105 S.Ct. at 1496–97.

Lower court interpretations of *Loudermill* further demonstrate that defendants' discharge of Powell did not violate the "clearly established" contours of Powell's' pretermination rights to due process of law. At the time Powell was terminated, three courts of appeal had interpreted *Loudermill* to permit abbreviated pretermination hearings similar to that which Powell was afforded. *Riggins v. Board of Regents of the University of Nebraska*, 790 F.2d 707 (8th Cir.1986); *Brasslett v. Cota*, 761 F.2d 827 (1st Cir.1985); *Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985).

In *Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985), Kelly, an employee of a city utility department, was discharged after a face-to-face confrontation with his supervisor in which he refused to work "standby" hours as required. *Id.* at 1413. The supervisor had confronted Kelly and asked why he had not responded to a standby call. *Id.* Kelly replied that he was not scheduled to work standby that week and that due to other obligations he would be unable to work standby for the rest of the week. *Id.* After the supervisor informed Kelly that he would be terminated unless he agreed to work standby, "Kelly still declined to work standby and left the worksite." *Id.* Subsequently, Kelly was orally informed of his termination. *Id.*

Kelly brought an action against the city in district court alleging that his discharge was a denial of due process. *Id.* The district court granted summary judgment in favor of the city, and Kelly appealed. *Id.* On appeal, the Eleventh Circuit held that the face-to-face meeting provided sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*. *Id.* at 1414–15.[4] The court pointed out that, although Kelly had a chance to respond to the supervisor's charge, his primary response was that he was not scheduled to work standby for the rest of the week. *Id.* at 1414. Kelly continued to refuse to work standby even after the supervisor, who was in charge of scheduling, informed Kelly that he was indeed scheduled for standby. *Id.* at 1415.

The court concluded that the supervisor "certainly had 'reasonable grounds to believe the charges against the employee are true and support the proposed action'" because he had actually heard the employee's refusal to work standby hours. *Id.* at 1415 (quoting *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495). Because Kelly did not avail himself of the opportunity to renounce his refusal to work standby and thereby retain his job, the court was satisfied "that there were adequate pretermination procedures to serve 'as an initial check against mistaken decisions.'" *Id.* (quoting *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495).

In *Brasslett v. Cota*, 761 F.2d 827 (1st Cir.1985), Brasslett, the Fire Chief for the town of Orono, Maine, granted a local television station an interview to discuss the fire fighting capabilities of the Orono fire department. *Id.* at 830. During that interview, Brasslett stated that all but one of the department's fire trucks was disabled. *Id.* at 831. "Prior to the interview, two firemen had placed signs bearing the word 'Sunkist' on one of the two disabled fire

---

**4.** However, the court in *Kelly* reversed the district court's conclusion that Kelly had been afforded adequate post-termination procedures. *Id.* at 1416. The court emphasized that, under *Loudermill*, "the assurance that a full evidentiary hearing will be forthcoming is one of the primary reasons for allowing the abbreviated pretermination procedures." *Id.* at 1415. The court concluded that an informal conference that Kelly had with the city manager after the supervisor terminated him did not satisfy that requirement. *Id.* at 1415. Powell, unlike Kelly, did have the benefit of a post-termination arbitration hearing. Nevertheless, the *Kelly* court's reasoning remains persuasive as to the adequacy of the pretermination hearing afforded Powell.

trucks in the station. Those signs appeared on the broadcast of the interview." *Id.* The interview generated a great deal of adverse publicity. *Id.* at 831–32. As requested by the Town Manager, Brasslett submitted a formal letter of apology and explanation. *Id.* at 832.

Shortly thereafter, the town council held an informal meeting to discuss the incident. *Id.* Brasslett and the Town Manager attended this meeting. *Id.* Brasslett was asked some questions by the council, and the council asked the Town Manager if he was considering disciplining Brasslett. The Town Manager indicated that he would make his decision after further study. *Id.*

The next day, after reviewing a tape of the Brasslett interview, as well as materials related to past misconduct contained in Brasslett's personnel file, the Town Manager met with Brasslett. *Id.* The two men met for approximately one hour and discussed the interview and the past misconduct. *Id.* After discussing the possible disciplinary actions that might be taken against Brasslett, the Town Manager concluded the meeting by informing Brasslett that he would be dismissed. *Id.* The following day, Brasslett received a letter from the Town Manager informing him of the reasons for the dismissal and the grievance procedure available to him. *Id.* at 832–33.

After unsuccessfully challenging his dismissal through the grievance procedures, Brasslett brought suit, arguing that his discharge deprived him of his procedural due process rights. *Id.* at 833. The district court rejected Brasslett's argument and held that the one-hour pretermination conference, in conjunction with the Town's grievance mechanisms, was constitutionally adequate procedure. *Id.* On appeal, the Court of Appeals for the First Circuit held that

> *Loudermill* is dispositive of [Brasslett's] procedural due process argument. In his one hour conference with Manager Cota, Brasslett was notified of the possibility of discharge and was afforded an ample opportunity to defend his actions and rebut any erroneous allegations. Accord-

ingly, we uphold the district court's findings on this issue.

*Id.* at 836.

In *Riggins v. Board of Regents of the University of Nebraska,* 790 F.2d 707 (8th Cir.1986), the Eighth Circuit held that the dismissal of a custodian, Riggins, comported with due process even though she was only provided an informal meeting in which to rebut charges of insubordination. *Id.* at 710–11. Riggins had an unidentified problem with her co-workers that resulted in her transfer to a different custodial shift in a different building. *Id.* at 708–09. Riggins called her supervisor to learn of her new assignment. *Id.* at 709. Her supervisor allegedly told her that he and another supervisor wished to meet with her. *Id.* She responded by refusing to meet with both of them together. *Id.* According to the supervisor, when he confronted her at work, she again refused to meet with both supervisors and walked away from him. *Id.*

The two supervisors subsequently met with Riggins, and her supervisor informed her that she was being suspended indefinitely. *Id.* At that meeting, Riggins had an opportunity to read the supervisor's report. *Id.* At Riggins' request, the supervisor included in his report the fact that Riggins had refused to meet with the two supervisors together. *Id.*

A few days later, Riggins met with the division manager to discuss the supervisor's report. *Id.* That meeting lasted just over an hour and a half. *Id.* At the meeting, Riggins had an opportunity to tell her version of the incident and of an earlier meeting in which she alleged that the two supervisors had shouted at her. *Id.* Riggins and the division manager also discussed her prior work history. *Id.*

After talking with Riggins, the division manager met with the two supervisors and decided that Riggins was not telling the truth about the incident of insubordination or the earlier meeting in which she alleged that the supervisors had shouted at her. *Id.* He wrote Riggins a letter notifying her of her permanent termination. *Id.*

Riggins did not avail herself of the formal post-termination grievance procedures. Instead, she filed an action in federal district court challenging her discharge as a deprivation of due process. *Id.* at 709–10. The district court ruled that "the pretermination notice and hearing afforded to Riggins were not constitutionally inadequate." *Id.* at 710. The Eighth Circuit affirmed, holding that Riggins had received sufficient notice of the insubordination charge against her, and an adequate opportunity to respond to that charge, in the two meetings with her superiors. *Id.* at 710–11. Although Riggins argued that she did not receive sufficient notice because she was unaware the division manger intended to discuss her prior work history, the court reasoned that this was not a significant part of the meeting. The trial court ruled that Riggins had adequate notice to respond to the charge of insubordination because she "certainly knew [the meeting] would be about the insubordination incident." *Id.* at 709. The Eighth Circuit affirmed that ruling. *Id.* at 711. The court in *Riggins* was satisfied that, because formal post-termination grievance procedures were available to Riggins, the abbreviated pretermination procedures were constitutionally sufficient under *Loudermill.*

*Kelly, Brasslett* and *Riggins* together demonstrate that defendants provided Powell a constitutionally sufficient pretermination hearing. *Kelly* established the constitutionality of a pretermination hearing that consisted entirely of a brief face-to-face conversation with a supervisor. The supervisor's witnessing of the insubordination at that meeting sufficiently guarded against the possibility of an erroneous termination. In this case, because Powell admitted to the act forming the basis for the charge against him, the face-to-face pretermination hearing was likewise sufficient to prevent an unwarranted termination of Powell.

Although the pretermination hearing afforded the plaintiff in *Brasslett* was longer than the meeting between Powell and Oates, *Brasslett,* like *Kelly,* recognized that nothing in *Loudermill* requires that there be delay between the notice of a charge and the public employee's opportu-

nity to respond. In *Brasslett,* the plaintiff was apprised of the allegation against him and the possibility of termination during the pretermination meeting. In this case, Oates' questions served to notify Powell of the charge against him. Although Oates did not inform Powell of the termination until after Powell had admitted his interference with the proposed mutual aid agreements, it was Powell who ended the pretermination meeting at that point rather than trying to persuade Oates that termination was unwarranted.

In contrast to *Kelly* and *Brasslett,* the pretermination meetings in *Riggins* were more extensive. However, in *Riggins* there was a factual dispute about the basis of the insubordination charge that was absent in *Kelly, Brasslett,* and this case. Therefore, *Riggins* does not support Powell's argument that he was deprived of "clearly established" due process rights.

In *Kelly, Brasslett* and *Riggins* the holdings affirming the constitutionality of the abbreviated pretermination hearings, as in *Loudermill,* were premised in part upon the available post-termination grievance procedures. The record in this case establishes that the post-termination arbitration procedure for grievances available to Powell was also sufficiently comprehensive.

At a bare minimum, *Kelly, Brasslett* and *Riggins* together created sufficient support for the constitutionality of defendants' conduct that defendants could not have known that their actions violated "clearly established" law. Our research has not disclosed any post-*Loudermill* cases decided prior to the time of Powell's termination suggesting that defendants should have known that Powell was entitled to greater pretermination procedures than those that were provided to him.

Although we have concluded that the manner in which defendants discharged Powell did not violate his rights under *Loudermill,* it is because Powell has not satisfied his burden as plaintiff of demonstrating that defendants' conduct in discharging him violated the "clearly established" contours of his pretermination due

process rights under *Loudermill* and its progeny that we hold that defendants are immune from suit in this case. *See, e.g., Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 43–44 (1st Cir.1988) (recognizing qualified immunity where no violation of due process occurred under the "clearly established" law of *Loudermill*); *Raffucci Alvarado v. Sonia Zayas,* 816 F.2d 818, 820–22 (1st Cir.1987) (same). Defendants are entitled to summary judgment as a matter of law. Accordingly, the district court's May 25, 1988 order is REVERSED, and the case is REMANDED with instructions that the district court enter summary judgment for defendants in accordance with this opinion.