**Gerald JEFFERIES, Plaintiff,**

v.

**WYANDOTTE COUNTY BOARD OF COUNTY COMMISSIONERS, Defendant.**

**No. CIV. A. 96–4120–GTV.**

United States District Court, D. Kansas.

Sept. 17, 1997.

---

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Plaintiff.

Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, F. Charles Dunlay, IV, Office of the County Counselor, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this civil rights action alleging that the elimination of his position with the Wyandotte County Sheriff's Department violated his constitutional rights under the First and Fourteenth Amendments. The case is before the court on defendant's motion for summary judgment (Doc. 28) pursuant to Fed.R.Civ.P. 56(b). For the reasons stated below, defendant's motion for summary judgment is granted on plaintiff's Fourteenth Amendment claims and denied on plaintiff's First Amendment claim.

### I. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principle purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. *See id.* at 254, 106 S.Ct. at 2513.

## II. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in the summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

In January 1993, on the recommendation of then-Wyandotte County Sheriff Bill E. Dillon, defendant hired plaintiff to work in the county Sheriff's Department. At the time of his hiring, plaintiff was Dillon's personal friend, had worked with Dillon on the

Kansas City, Kansas police force, and had supported Dillon in his successful campaign for Sheriff of Wyandotte County. By plaintiff's own admission, Dillon's recommendation to hire plaintiff was predicated on their friendship and political connections.

Plaintiff, who neither signed a written employment contract nor negotiated the terms and conditions of his employment, began his tenure in the sheriff's department as a temporary employee. He then became a full-time employee in February 1993, and was assigned the rank of major. In May 1993, defendant appointed plaintiff to the position of Director of Planning and Research. Plaintiff lacked the necessary qualifications for that position, however, and quickly was reassigned to the newly-created position of Major of Internal Security. As Major of Internal Security, plaintiff was the third highest ranking officer in the sheriff's department.

The events leading to this lawsuit began to unfold in January 1995. Amidst an investigation into alleged financial and criminal wrongdoings by the Sheriff's Department, Sheriff Dillon resigned. Pursuant to state law, the Wyandotte County Clerk, Edward Mayfield, became acting sheriff. Mayfield, having little knowledge of the Sheriff's Department operations, sought to determine what activities senior officers in the department, including plaintiff, performed. According to Mayfield's deposition, during the last week of January 1995, he asked plaintiff what plaintiff did for the department, and plaintiff replied, "nothing." Plaintiff disputes this rendition of the conversation and contends that he approached Mayfield and asked what he could do for him. Mayfield allegedly responded by asking, "What have you been doing?" to which plaintiff replied, "nothing."

On January 26, 1995, Mayfield and Jail Administrator Scott Hutton met with plaintiff and asked him to resign. According to plaintiff, after he refused this initial request, Mayfield asked him again to resign stating, "You came over with Dillon. I want you to go with Dillon."[1] Plaintiff replied, "No, you are going to have to abolish my job." Defendant contends that at this meeting, Mayfield told plaintiff of his concerns, allowed him to

---

1. Both defendant and Mayfield deny that Mayfield made this statement.

respond, and then asked for his resignation. Shortly thereafter, defendant, at Mayfield's request, eliminated plaintiff's position.

On January 27, 1995, the Kansas City Star published a news story concerning the Wyandotte County Sheriff's Department. The story quoted Mayfield as stating, "I couldn't get what his (Jefferies') actual job was. Those jobs were created by the former sheriff. We're facing a tight budget. We don't need those positions." Mayfield also informed the newspaper that defendant planned to eliminate plaintiff's position.

Plaintiff then initiated this action pursuant to 42 U.S.C. § 1983 claiming violations of his Fourteenth Amendment rights to substantive and procedural due process, his First Amendment right to free association, and his right to be paid for accrued compensatory time off. Plaintiff has either dropped or abandoned his substantive due process and overtime compensation claims. Only the First Amendment and procedural due process claims remain.

Additional facts will be provided as necessary.

### III. Discussion

### A. Procedural Due Process Claims

Plaintiff first asserts that his discharge from the Wyandotte County Sheriff's Department violated his right to procedural due process under the Fourteenth Amendment. The Fourteenth Amendment's guarantee of procedural due process applies when a constitutionally protected property or liberty interest is at stake. As the United States Supreme Court has long held:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount.

*Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

### 1. Property Interests

An interest in property arises only when there is a legitimate claim of entitlement; a mere abstract need or unilateral expectation for a particular benefit is insufficient to create a property interest. *Id.* at 577, 92 S.Ct.

at 2709. Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings. *See Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Richardson v. City of Albuquerque,* 857 F.2d 727, 731 (10th Cir.1988). The existence of such "rules or mutually explicit understandings" are determined by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The court, therefore, must decide whether the Kansas Supreme Court would find a property interest under the facts of this case. *See Graham v. City of Oklahoma City,* 859 F.2d 142, 146 (10th Cir.1988).

In the absence of an express or implied contract to the contrary, Kansas law presumes employment to be "at will." See *Nguyen v. IBP, Inc.,* 905 F.Supp. 1471, 1486 (D.Kan.1995); *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54–55, 551 P.2d 779 (1976). An "at-will" employee has no property interest in employment. *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). However, Kansas has recognized implied-in-fact employment contracts to be an exception to this "at-will" doctrine. *See Morriss v. Coleman Co.,* 241 Kan. 501, 513, 738 P.2d 841, 848–49 (1987). Because plaintiff admits that he neither signed an actual employment contract nor bargained for the terms of consideration of his employment, his property interest claim must be based on a theory of implied contract.

"A mutual intent to form a contract is necessary to show that an implied-in-fact contract exists." *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1492 (10th Cir. 1995) (citing *Atchison County Farmers Union Co-op Ass'n v. Turnbull,* 241 Kan. 357, 363, 736 P.2d 917, 922 (1987)).

> Where it is alleged that an employment contract is one to be based upon the theory of "implied in fact," the understanding and intent of the parties is to be ascertained from several factors which include written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the

business, the situation and objective of the parties giving rise to the ·relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 537 (10th Cir.1995) (citing *Morriss,* 241 Kan. at 513, 738 P.2d at 848–49).

■ The only evidence in the record to support plaintiff's implied-in-fact contract theory consists of the Wyandotte County Personnel Policy Guide and former Sheriff Dillon's affidavit. Plaintiff maintains first that the county's policy guide evidences an intent to remove employees only for just cause. The court disagrees. The policy guide, under the heading "Rules & Discipline," specifically states:

> These rules are not considered nor intended to include all situations where disciplinary action may be required. Nor are they intended to infringe on any current departmental practices or regulations in effect. Good judgment and common sense need to be applied.

(Pl. Resp. to Def. Mot. for Summ. J., Ex. 12 at 72). This language does not limit the defendant's authority to discipline or discharge its employees. The policy guide merely lists various infractions and corresponding penalties; it does not state that discipline, including termination, is limited to situations expressed therein. Furthermore, the policy guide contains the following disclaimer:

> [Neither] [t]his policy guide nor any part of it is intended nor· shall it be construed by any person subject to these provisions to create a contract between Wyandotte County and any employee.[2]

(Def.'s Reply in Supp. of Def. Mot. for Summ. J., Ex. 2). The policy guide, therefore, does not establish an implied-in-fact contract between plaintiff and defendant.

■ Plaintiff also maintains that defendant had a continuing policy and practice of requiring just cause to terminate an employ-

ee. In support of his position, plaintiff offers the testimony of former Sheriff Dillon:

> Upon entering the Sheriff's Department I learned that the County had a practice of not terminating employees unless there was just cause which was consistent with the written personnel practices.
>
> \* \* \*
>
> It was always my understanding from my work with the personnel director and the county counselor that an employee could only be terminated for just cause. The employee would first be properly warned, counseled, meetings would be had and, if necessary, meeting with the personnel director and/or the county counselor to come to a solution prior to making a decision to terminate an employee. This would all be documented to clearly show the cause of termination in the event the employees action warranted termination.

(Dillon Aff. ¶¶ 13 and 17). This testimony, if true, suggests that a practice or policy of only terminating for cause was in existence when plaintiff was hired.

Whether an implied contract exists, thereby creating a property interest in employment, is normally a question of fact for the jury to decide. *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 537 (10th Cir. 1995); *Koopman v. Water Dist. No.1,* 972 F.2d 1160, 1164 (10th Cir.1992). "[U]nder Kansas law, summary judgment remains "rarely appropriate" in implied contract cases because of the necessity of determining both parties' subjective intent to form a contract." *Anglemyer,* 58 F.3d at 537. The court finds that the evidence presented by plaintiff is sufficient to present a jury question of whether an implied contract of employment existed.

Assuming plaintiff had a protected property interest in his continued employment, the court must consider whether he received all the process to which he was due. If an employee has a protected property interest in his continued employment, he is due some form of hearing prior to termination. *See Cleveland Bd. of Educ. v. Loudermill,* 470

---

**2.** While the purpose of this "disclaimer" is clear, the court suggests defendant review and correct its potentially contradictory and confusing wording.

U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Under *Loudermill*, notice and an opportunity to respond are the essential requirements of due process. *Id.* at 545–46, 105 S.Ct. at 1495. "The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate the more elaborate post-termination hearing." *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir.1989). The adequacy of pretermination procedures is predicated, in part, upon the protections provided by post-termination proceedings. *See Loudermill*, 470 U.S. at 547–48, 105 S.Ct. at 1496–97; *Derstein v. Kansas*, 915 F.2d 1410, 1413–14 (10th Cir. 1990).

The Tenth Circuit has determined that no delay between the notice and the "opportunity to respond" is required. *Powell*, 891 F.2d at 1459. Therefore, due process is satisfied if, at the pretermination hearing itself, the employee is informed of the purpose of the pretermination hearing and given a chance to respond. In *Powell*, William Powell, a Bartlesville, Oklahoma firefighter was fired for endangering public safety. Powell met with fire chiefs from nearby towns and requested that they refuse to respond to any calls for mutual aid from Bartlesville until all off-duty Bartlesville firemen were first called back for overtime wages. When city officials discovered and investigated plaintiff's dangerous dealings, they held a "pretermination meeting." *Id.* at 1455. Powell received no notice prior to the pretermination hearing. At the hearing, city officials asked Powell if he had asked the fire chiefs not to sign the mutual aid agreement. He responded in the affirmative. At that time, Powell was fired. *Id.* at 1459.

The Tenth Circuit held that Powell received sufficient due process. The court determined that Powell received adequate notification of the charges against him when he was asked at the pretermination hearing whether he had met with the fire chiefs. The court also found that Powell was given an adequate chance to respond. The court stated that Powell simply did not "choose" to exercise his opportunity to attempt to persuade city officials not to fire him. *Id.*

■ In the case at bar, it is uncontroverted that a pretermination meeting occurred between Mayfield, Hutton, and plaintiff on January 26, 1995. In his affidavit, Mayfield testified that

> I told Jefferies of my concerns relating to his position with the Sheriff's Department during which time he had a chance to respond. I determined that Jefferies was not performing any substantial work for the benefit of the County and that his continued employment would be detrimental to the Department. Subsequently, I asked Jefferies to resign. In response, Jefferies stated that he would prefer that his position be abolished.

(Mayfield Dep. ¶ 10). Mayfield's description of the pretermination meeting, if accepted, satisfies the Tenth Circuit's requirements for sufficient due process. Plaintiff, however, argues that his due process was violated because he did not receive advance notice of the meeting. Plaintiff also avers that Mayfield did not intend this meeting to be a pretermination hearing and that Mayfield's "concerns" were mere pretext for a politically-motivated discharge. Assuming all plaintiff's contentions to be true, the court does not find a due process violation.

The official reason for plaintiff's termination, whether true or not, is that plaintiff was performing no substantial work for the county. Although plaintiff contends he actually was fired for his political connections with former Sheriff Dillon, it is undisputed that he was made aware of the official reasons for his discharge at the pretermination meeting. The fact that plaintiff believed the accusations to be mere pretext is immaterial to the due process analysis.

Plaintiff also contends that Mayfield did not intend his meeting to be a "pretermination meeting." At his deposition, Mayfield admitted that he was not familiar with the term "pretermination hearing." (Mayfield Dep., at 44–45). However, Mayfield's ignorance of specific terminology is immaterial to the due process analysis. What matters is that plaintiff was given notice and an opportunity to respond. Moreover, the formality and procedural prerequisites of a pretermination hearing may vary depending upon the

nature of the subsequent proceedings. *See Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. In the present case, the memoranda filed by both parties appear to acknowledge the existence of formal post-termination procedures available to plaintiff. Accordingly, the court concludes that plaintiff has not shown a due process violation and defendant is entitled to summary judgment on this issue.

### 2. Liberty Interest

■ Plaintiff also claims an entitlement to procedural due process on the ground that his termination implicated a liberty interest in his continued employment. Plaintiff's claim is not based upon any official act of the county, but rather on the actions of Sheriff Mayfield. A plaintiff seeking to impose liability on a municipality must identify a municipal "policy" or "custom" that caused his injury. *See Board of County Comm'rs v. Brown,* —— U.S. ——, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formerly approved by an appropriate decisionmaker may fairly subject a municipality on the theory that the relevant practice is so widespread as to have the force of law.

*Id.*

There is nothing in the record to indicate that Mayfield was a decisionmaker for the county or that Wyandotte County had a custom or policy of permitting its Sheriff or other employees to make false and defamatory statement to the press. Moreover, even if the court found Mayfield's actions attributable to the county, "plaintiff must also demonstrate that through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* Plaintiff fails to address this issue, and the court finds no evidence in the record demonstrating that defendant deliberately caused the alleged due process violation. Accordingly, the court grants summary judgment to defendant on this issue.

### B. First Amendment Claim

■ Plaintiff further contends that defendant terminated him because of his political association with former Sheriff Dillon. "This First Amendment freedom of association claim is distinct from the due process claims and must be considered regardless of whether [plaintiff] had a legitimate expectation of continued employment." *Dickeson v. Quarberg,* 844 F.2d 1435, 1440 (10th Cir.1988). Plaintiff's freedom of association claim turns on two decisive issues: (1) Did defendant have an absolute right to terminate plaintiff due to the nature of plaintiff's position and duties; and (2) Was plaintiff's political affiliation or patronage a motivating factor behind the dismissal. See id. at 1442–43; *Johnson v. Wefald,* 766 F.Supp. 977, 982 (D.Kan.1991). The burden of proof rests with defendant on the first issue and with plaintiff on the second. *See Dickeson,* 844 F.2d at 1441.

Plaintiff contends that because his position did not require Sheriff Mayfield to demand political loyalty, his political associations with the former sheriff could not have justified his dismissal. To determine whether political affiliation is an appropriate requirement for the effective performance of a given position, the court must analyze the nature of the employee's duties and responsibilities. *See id.* at 1442. In doing so, the court should "focus on the inherent powers of the positions as well as the actual duties performed." *See id.* In close cases, the court's doubt should be decided in favor of the discharged employee. *See Elrod v. Burns,* 427 U.S. 347, 368, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976).

Not surprisingly, plaintiff and defendant provide the court with differing takes on plaintiff's responsibilities and duties as a county employee. Plaintiff contends that he answered to the sheriff and the undersheriff and had no policymaking authority. He further claims that he was privy to no confidential information, and that his duties were delegated to him by the Sheriff. Conversely, defendant argues that plaintiff was third in command, that he served as acting sheriff in the sheriff's absence, and that plaintiff's position carried broad, inherent authority. Under the test articulated by the Tenth Circuit

in *Dickeson*, the court finds that genuine issues of material fact remain with respect to plaintiff's duties and responsibilities. The court, therefore, must proceed to the second prong of the analysis.

To survive summary judgment on the second issue, plaintiff must establish that his political association with former Sheriff Dillon was a motivating factor in his dismissal by defendant. Plaintiff's primary evidence is that, upon his discharge, Mayfield told him "You came over with Dillon. I want you to go with Dillon." Plaintiff also alleges that Mayfield's proffered reason for discharging plaintiff—that plaintiff was not performing any substantial work—is mere pretext for a politically motivated termination. Finally, plaintiff argues that an improper motive on the part of defendant can be inferred from the fact that "most" of former Sheriff Dillon's appointees have been dismissed since Dillon's resignation.

In response, defendant argues that plaintiff has failed to allege or come forward with any specific facts that defendant eliminated plaintiff's position for politically-motivated reasons. The court disagrees. Of the approximately eighty-three persons hired by Dillon, thirty-four have left the department since Dillon's resignation, and eight were terminated. The court is unsure if these numbers include plaintiff. When viewing these statistics and Mayfield's alleged statement in a light most favorable to plaintiff, the court concludes that there is a genuine issue of material fact as to whether plaintiff's discharge was politically-motivated. Accordingly, defendant's motion for summary judgment is denied on this issue.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 28) is granted as to plaintiff's procedural due process claims and denied as to plaintiff's First Amendment freedom of association claim.

**IT IS SO ORDERED.**