**Leonard DEMARCO, et al., Plaintiffs,**

v.

**CUYAHOGA COUNTY DEPARTMENT OF HUMAN SERVICES, et al., Defendants.**

**No. 1:97–CV–2220.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 24, 1998.

Terry H. Gilbert, Jillian S. Davis, Friedman & Gilbert, Cleveland, OH, for Plaintiffs.

Steven William Ritz, Robert E. Matyjasik, Office of Prosecuting Attorney, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION

GWIN, District Judge.

On October 7, 1997, the defendants filed a motion to dismiss this 42 U.S.C. § 1983 litigation [Doc. 9]. On October 27, 1997, Defendant Joseph Garcia[1] moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 11]. This case arises from defendants' suspension and demotion of Plaintiff Leonard DeMarco from his county

---

1. Defendant Garcia joined in the first motion to dismiss in his official capacity.

job. Here, the Court must decide if defendants denied the plaintiff his constitutional rights to substantive and procedural due process. In deciding whether defendants denied plaintiffs his constitutional rights, the Court examines whether plaintiff's pre-termination hearing was procedurally sufficient. In deciding whether defendants denied plaintiff his constitutional rights, the Court also examines whether defendants' conduct violated the plaintiff's substantive rights to due process. For the reasons that follow, the Court grants defendants' motion to dismiss.

## I

Plaintiffs Leonard and Jane DeMarco bring this action against Cuyahoga County, the county's human services department, and his former boss, Joseph Garcia. In the complaint, the plaintiffs seek monetary, injunctive and declaratory relief for the manner in which the county interfered with DeMarco's employment with the county. Plaintiffs sue under 42 U.S.C. § 1983 and § 1988, and the Ninth and Fourteenth Amendments to the federal Constitution.

In Count I of the complaint, Plaintiff Leonard DeMarco claims the defendants violated his procedural due process rights because the defendants gave him inadequate notice of the charges against him. In Count II, DeMarco says the defendants deprived him of his right to substantive due process. Count III is a claim for intentional or reckless infliction of emotional distress. Count IV is a state defamation action based on Defendant Garcia's publishing a voice mail to employees of the county department of human services. In Count V, Mrs. DeMarco claims loss of consortium.[2]

In their motions to dismiss, the defendants argue that the plaintiff's allegations do not state claims under the Due Process Clause of the Fourteenth Amendment. In examining this argument, the Court looks to what procedural protections the Constitution requires be given the plaintiff. The Court also looks to whether the acts of the defendants were

so oppressive as to substantively violate the Due Process Clause of the Fourteenth Amendment. Finally, the Court examines whether DeMarco states a cause of action under the Ninth Amendment.

## II

Plaintiff Leonard DeMarco is a former manager of the Investigation Department in the Entitlement Services section of the Defendant Cuyahoga County Department of Human Services. He worked for the department from 1974 through 1995. In working for the Cuyahoga County Department of Human Services, Defendant Joseph Garcia supervised Plaintiff DeMarco. While supervising Plaintiff DeMarco, Garcia was the Director of Entitlement Services.[3]

The Cuyahoga County Department of Human Services demoted Plaintiff DeMarco after a scandal arose among employees reporting to him. The scandal involved fraudulent mileage and parking reimbursement claims among employees of the Investigation Department. The plaintiff says he was not involved in this scandal. DeMarco claims he had sought systems to keep more accurate reports on mileage. Unlike other departments, DeMarco says his department had a written policy on mileage reporting. DeMarco believes he was singled out because of his managerial position.

After the investigation of the mileage issue had begun, on October 17, 1995, Defendant Joseph Garcia met with Plaintiff DeMarco at Garcia's office. At this October 17, 1995, meeting Defendant Garcia asked for the plaintiff's resignation. After being asked for his resignation, Plaintiff DeMarco declined to resign.

On November 14, 1995, the Cuyahoga County Department of Human Services relieved DeMarco of his duties as manager of the Investigation Department, and placed him on administrative leave with pay. On January 2, 1996, the defendant put him on temporary assignment to research and devel-

---

**2.** Elsewhere Plaintiff Jane DeMarco also claims loss of her cattle, and the sale of her business, as a direct and proximate result of her husband's dismissal.

**3.** Plaintiff DeMarco sues Garcia in both his individual and official capacities.

op an agency mileage and parking policy. He continued to receive his pay.

Near January 23, 1996, DeMarco received a Notice of Pre–Discipline Conference. With this notice, the department made eleven allegations against the plaintiff. After receiving this notice, the department conducted a pre-discipline conference. After conducting this pre-discipline conference, the Cuyahoga County Department of Human Services suspended and demoted Plaintiff DeMarco.

In its Order of Removal and Suspension, issued March 19, 1996, and effective March 23, 1996, the defendant county commissioners listed allegations different from those given in the earlier notice. The March 19, 1996, order charged plaintiff with neglect of duty, suspended him for five days without pay, and demoted him from Investigation Manager to Investigator at a wage differential of $24,000.

Plaintiff DeMarco appealed his demotion to the State Personnel Board of Review. On January 6, 1997, an administrative law judge for the State Personnel Board of Review held that the county's removal and suspension order violated Leonard DeMarco's due process rights. Because the grounds cited in the notice of a pre-discipline conference differed from the reasons given in the demotion, the administrative law judge found the county had failed to give DeMarco notice and an opportunity to respond to all but one charge.

Meanwhile, Plaintiff Leonard DeMarco suffered a nervous breakdown and severe depression. The complaint alleges these resulted from the defendants' actions. Because of this medical condition, DeMarco applied for disability retirement on August 5, 1996. On December 20, 1996, the plaintiff was granted a disability retirement, effective retroactive to April 1, 1996.

After the Public Employees Retirement System granted DeMarco disability retirement, the Defendant Cuyahoga County rescinded its disciplinary action against Leonard DeMarco.

## III

In considering a motion to dismiss for failure to state a cause of action, the Court accepts all factual allegations as true and construes the allegations in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *See also U.S. ex rel. McKenzie v. Bellsouth Telecommunications, Inc.,* 123 F.3d 935 (6th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 855, 139 L.Ed.2d 755 (1998); *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). A court properly grants a motion to dismiss only if it appears that the plaintiff can prove no set of facts that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## IV

Plaintiff DeMarco claims the defendant denied him procedural due process, though he received a pre-termination hearing, because he received inadequate notice of the charges against him. In making his claim that they denied him his constitutional rights, DeMarco needs to show he had a property right in continued employment with the county. If DeMarco had a property right in continued employment, the state of Ohio or one of its political subdivisions could not deprive him of this property without due process of law. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062, 1067 (6th Cir.1984).

Under Ohio law, an Ohio civil servant may have a property right in continued employment. State law defines the contours of such property rights under state law. If Plaintiff DeMarco has such a property right, Cuyahoga County must offer him a pre-termination hearing. *Loudermill,* 470 U.S. at 538–42, 105 S.Ct. 1487.

Here, Ohio Revised Code §§ 124.11 and 124.34 [4] "plainly supports" state and local

---

4. Ohio R.C. § 124.34 says, in pertinent part:

The tenure of every officer or employee in the classified service of the state and the counties,

government employees having property rights in continued employment. *Id.* at 538–39, 105 S.Ct. 1487 The parties do not dispute that Plaintiff DeMarco had a property interest in his county position.

The "essential" principle behind procedural due process is that deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542, 105 S.Ct. 1487 (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The *Loudermill* Court emphasized this principle requires "some kind of a hearing" before the discharge of an employee who has a constitutionally protected property interest in his employment. *Id.* As noted, Plaintiff DeMarco received such a hearing before demotion.

This pre-termination hearing need not be elaborate, or even a full evidentiary hearing. This hearing

> need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and. an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 545–46, 105 S.Ct. 1487 (internal citations omitted).

Because he received a hearing, the Court need examine if it comported with due process when the notice of grounds for discipline

differs from the ultimate grounds for discipline.

DeMarco says the defendant denied him procedural due process because the January 23, 1996, Notice of Pre–Discipline Conference cited different grounds for discipline than the grounds ultimately found. DeMarco claims the grounds given in the March 19, 1996, Order of Removal and Suspension "listed a completely different set of allegations. The Plaintiff was therefore required to face the accusations against him without ever receiving pre-hearing notice of what they were." (Complaint, at ¶ 15). The complaint does not list the individual allegations in the notice or subsequent order. His complaint also notes that a state administrative law judge for the State Personnel Board of Review found in his favor on the issue of inadequate notice and opportunity to respond "to all but one charge." (Complaint, at ¶ 14).

■ The Court need decide if the Due Process Clause requires notice before the pre-disciplinary conference of the grounds ultimately relied upon to justify discipline. While the Due Process Clause requires a pre-deprivation hearing in some situations, there is no constitutional right to predeprivation notice of the grounds used to support discipline.

■ The pre-termination hearing must give the employee the "chance to clarify ... misunderstandings or to convince the employer that termination is unwarranted." *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir.1989). "Nothing in *Loudermill* suggests," the Tenth Circuit observed, "that a public employee is entitled to some type of 'pre-notification notice' of the charges against her or him." *Id.* at 1459. In *Powell*, the court held a brief face-to-face conversation was adequate notice of charges supporting the subsequent firing. *Id.*

civil service townships, cities, city health districts, general health districts, and city school districts thereof, holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, fined in excess of five days' pay, suspended, or removed, except as provided in section 124.32 of the Revised Code, and

for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.

In *Loudermill*, the Supreme Court did not require a full adjudicatory hearing before a state acts to impair a state property interest. The Sixth Circuit described this in *Duchesne v. Williams*, 849 F.2d 1004 (6th Cir.1988) (en banc), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989). In fact, the Sixth Circuit found that a pre-termination hearing resembles the procedures required of public schools before disciplining students. *Id.* at 1007 (citations omitted).

In *Collyer v. Darling*, 98 F.3d 211 (6th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997), the Sixth Circuit described the notice required before the pre-discipline hearing. In *Collyer*, a state agency gave notice to an employee before discipline. The notice was a letter stating a doctor had determined the employee was not fit for service because of a mental condition. However, with this notice, the state did not give a copy of the doctor's report. *Id.* at 224. The Sixth Circuit held that the state institution had provided the employee sufficient notice for his suspension. The Court denied the procedural due process claim on the further ground that the employee had adequate postdeprivation remedies available.[5] *Id.*

DeMarco argues the pre-termination hearing cannot be meaningful if the plaintiff addresses charges different from those used to support his discharge. But as to being able to participate in the pre-termination hearing, the complaint does not say DeMarco was unable to present his side of the story. *Loudermill* requires nothing more to satisfy procedural due process in the pre-deprivation phase.

Other reported court decisions support this view. *See Riggins v. Board of Regents of the University of Nebraska*, 790 F.2d 707 (8th Cir.1986) (1½ hour meeting with division manager was adequate pre-termination notice because employee knew meeting was to be about insubordination incident even though she did not know meeting also would cover her prior work history); *Brasslett v. Cota*, 761 F.2d 827 (1st Cir.1985) (fire chief's meeting with town manager adequate notice of termination at conclusion of meeting); *Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985) (face-to-face meeting sufficient notice and opportunity to respond to satisfy pre-termination due process), *overruled in part on other grounds, McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).

Courts have not fashioned stringent standards covering pre-termination hearings because more formal post-termination hearings may remedy any deficiencies in the pre-termination phase and satisfy due process. *West v. Grand County*, 967 F.2d 362, 367 (10th Cir.1992). Plaintiff admits that he was afforded appeal rights to the State Personnel Board of Review under state law, and that he challenged the notice in that proceeding. DeMarco had the right to appeal that decision through the state courts, though he did not do so before filing this suit in federal court. Defendants maintain that DeMarco was afforded all the process that was due. *See Collyer*, 98 F.3d at 224 (even if pre-deprivation process inadequate, an adequate post-deprivation remedy satisfies procedural due process); *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir.1991) (if the facts are such that pre-deprivation remedies are impossible, then the inquiry is limited to post-deprivation remedies provided by the state, and the burden is on the plaintiff to demonstrate the inadequacy of the remedies).

■ Defendants argue the plaintiff cannot plead or prove the inadequacy of the state provided remedy. To state a claim for viola-

---

5. The *Collyer* Court explained:

Collyer claims the pre-deprivation process here was inadequate because the BDC did not give him sufficient notice of its intended action and because he was denied a copy of Dr. Lingl's report. First, although the BDC may not have followed the exact process contained in the collective bargaining agreement, Darling's August 4, 1988, letter followed by the formal notice gave Collyer sufficient advance notice of the intended disciplinary action and the hearing. As regards Dr. Lingl's report, *Loudermill* and its progeny do not require any more than adequate explanation of the reasons for the employer's action. Thus, it was sufficient for the BDC to inform Collyer that he was being "suspended" because the doctor determined him unfit due to a mental condition. *Collyer v. Darling*, 98 F.3d at 224.

tion of procedural due process, the plaintiff bears the burden of pleading and proving the state remedies for redressing the alleged wrong are inadequate. *Collyer*, 98 F.3d at 223; *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). Plaintiff does not allege in his complaint that his state post-deprivation remedies were inadequate. *Loudermill* held Ohio's post-termination administrative procedures for discharged public employees was adequate. *Loudermill*, 470 U.S. at 547–48, 105 S.Ct. 1487. *See also Parfitt v. Columbus Correctional Facility*, 62 Ohio St.2d 434, 437, 406 N.E.2d 528 (1980) (Ohio Rev.Code § 124.34 provides adequate procedural safeguards to classified employees), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).

Accordingly, the Court finds that the plaintiff has not stated a procedural due process claim and the Court will grant the defendants' motion to dismiss Count I of the complaint.

## V

█ In Count II of his complaint, DeMarco claims the manner of his dismissal violated substantive due process. While this claim is somewhat confusing, the Court construes it broadly.

In making his claim that he was denied substantive due process, DeMarco says the defendants dismissed him in an oppressive manner amounting to an abuse of process implicating his life, liberty, and property interests. According to the complaint, on the day of his removal, five security guards rifled through DeMarco's briefcase and escorted him out of the building. A memo was distributed notifying his staff of his removal pending an investigation. The locks on his office door were changed and the Defendant Garcia published a voice mail message to all employees that the plaintiff was being placed on administrative leave and that no one was to have any contact with him. Plaintiff was placed on administrative leave, given a five-day suspension and demoted from a supervisory position to that of an investigator.

Plaintiff argues the defendants targeted and pursued him because Defendant Garcia disagreed with DeMarco's management style and wanted him out. Plaintiff DeMarco says the defendants pursued the case against him in bad faith, ruining his health and reputation. As a result of these acts, DeMarco claims he is unable to work.

This substantive due process claim is separate from the issue of whether DeMarco was demoted without procedural due process. According to the plaintiff, the issue in this claim is whether or not the substance of the defendants' actions—the bad faith demotion and procedure, the accompanying stigmatization and DeMarco's resulting breakdown (which precluded him from seeking other employment)—violated DeMarco's substantive due process rights.[6]

█ Public employees, however, do not enjoy a substantive due process right in public employment. *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir.1992).[7] The Sixth Circuit stated:

Although *Baesler* did not conclude that all state-created contract rights lack substantive due process protection, and specifically left unanswered the question whether substantive due process may protect a contract right to keep a tenured job, we are persuaded by the reasoning of *Baesler* that plaintiffs' statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process.

*Id.* at 1351 (citations omitted).

█ Substantive due process protects "specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Gutzwiller v. Fenik*, 860 F.2d

---

6. In addition, plaintiff asserts further discovery will demonstrate the allegations of bad faith and outrageous behavior which raise the plaintiff's claims above the level of a mere deprivation of state-created contract rights.

7. Plaintiff requests the court to apply a "shocks the conscience" standard to his substantive due process claim. However, the Sixth Circuit has cautioned against applying the "shocks the conscience" standard for cases not involving physical abuse or excessive force. *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir.1991).

1317, 1328 (6th Cir.1988). Procedural due process, and not substantive due process, protects most state-created contract rights. *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990). One type of substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' ... It protects those interests, some yet to be enumerated, 'implicit in the concept of ordered liberty,' like personal choice in matters of marriage and the family." *Id.* (citations omitted).

The Sixth Circuit is dubious about raising state-created property rights to the level of such fundamental interests protected by substantive due process. *Id.* at 1353–54. In manifesting this hesitancy, the Sixth Circuit cited former Justice Powell's position that "[e]ven if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest in derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Id.* at 1354 (*quoting Regents of University of Michigan v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)) (Powell, J., concurring) (other citations omitted).

In making his substantive due process allegations, DeMarco seems to claim that defendants' official acts meet a "shocks the conscience" test. *Mertik v. Blalock,* 983 F.2d 1353, 1367 (6th Cir.1993). DeMarco alleges that further discovery will demonstrate that the defendants' conduct was conscience shocking in the extreme.

The Court finds that *Sutton* answers the question of whether termination from public employment may be analyzed under substantive due process.

■ The complaint makes claim arising out of plaintiff's suspension from public employment. In making this claim, the complaint fails to state a cause of action under either type of substantive due process claim.

Plaintiff fails to clearly articulate the fundamental constitutional right at issue in Count II, which he claims the defendants violated. *See McKinney,* 20 F.3d at 1558–60 (discussing proper application of substantive due process concerns in employment cases and overruling earlier 11th Circuit caselaw). Further, the facts of this case as outlined in DeMarco's complaint and repeated in this opinion do not meet the shocks the conscience test, even when all inferences are drawn in favor of the plaintiff. *Id.* at 1368.

Plaintiff Leonard DeMarco served as a supervisor in a department caught up in a scandal involving the exaggerated reporting of mileage reimbursements. The county's attempt to issue a five-day suspension and a demotion as discipline against a department supervisor does not shock the conscience of this court, other government workers or the taxpayers. While the plaintiff may have felt humiliated in leaving the building, he received pay for several months before the ultimately rescinded suspension and demotion order was issued. Further, the defendants apparently permitted DeMarco to retire on disability.

The Court will grant defendants' motion dismissing Count II of the complaint for failure to state a claim.

## VI

■ In the alternative, the plaintiff makes claim under the Ninth Amendment.[8] In making this claim, he says he should not have been deprived of his public employment by the bad faith and outrageous actions of the county government. He compares this to the Supreme Court's decision in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), where he says the Court used the Ninth Amendment to find an implicit First Amendment right of the public to attend criminal trials.

■ In *Gibson v. Matthews,* 926 F.2d 532 (6th Cir.1991), the Sixth Circuit stated that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of [the Constitu-

---

8. The Ninth Amendment reads in part that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

tion]." *Id.* at 537. The Ninth Amendment may be invoked, if at all, to protect fundamental rights not set forth in the Constitution. An unenumerated right may be of constitutional magnitude, but only because of another amendment to the Constitution—a litigant cannot successfully claim a right existing solely under the Ninth Amendment. *United States v. Vital Health Products, Ltd.,* 786 F.Supp. 761, 777 (E.D.Wis.1992), *aff'd without opinion, United States v. LeBeau,* 985 F.2d 563 (TABLE) (7th Cir.1993).

The Fourteenth Amendment's Due Process Clause protected DeMarco's property interest in his government job. State law offers remedies for his complaints related to emotional distress and defamation. DeMarco has not articulated so fundamental a right that the the Ninth Amendment should be pressed into service to back up the Fourteenth Amendment in litigating a new fundamental right. Any Ninth Amendment claim fails to state a claim upon which relief may be granted.

## VII

The amended complaint also includes state law claims for emotional distress, defamation, and loss of consortium. Since the Court disposes of the only federal claims alleged in the plaintiff's complaint, only these state law claims are left to be litigated. The doctrine of pendent jurisdiction permits federal courts to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim, the two claims arising out of the same event or connected series of events. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because pendent jurisdiction is principally associated with federal question jurisdiction, where the existence of a federal claim supports jurisdiction of a pendent state claim, disposition of the federal claim allows the district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C. § 1367. The Court declines to exercise jurisdiction over the remaining state claims (Counts III, IV, and V) and dismisses those claims without prejudice.

## VIII

Accordingly, the Court grants the defendants' motions to dismiss the plaintiff's federal claims (Counts I and II). The Court will decline pendent jurisdiction over Counts III, IV, and V and dismiss these claims without prejudice.

IT IS SO ORDERED.