MEMORANDUM AND ORDER
 

 SAFFELS, District Judge.
 

 This matter comes before the court on Defendant’s Motion for Summary Judgment (Doc. 46). Plaintiff presents claims of sexual harassment, age discrimination, gender discrimination, retaliatory discharge, § 1983 violations of equal protection, due process, and free speech, breach of expressed and implied contract, wrongful discharge, intentional infliction of emotional distress, negligence and loss of consortium. Defendant seeks summary judgment on each of the claims. For the reasons set forth below, the court hereby grants the motion.
 

 I. INTRODUCTION
 

 All of the facts stated below are either uncontroverted or, if controverted, are construed in a light most favorable to the plaintiff.
 

 The City of Topeka (“City”) hired Dennis Wood as a maintenance worker on July 25, 1972. Wood was fifty-two years old when he was fired by the City on February 7, 1997. The City of Topeka claims it fired Wood because two female employees complained of sexual harassment and Wood had a history of sexual harassment complaints. Wood claims he was fired due to age and gender discrimination, and that the city was in breach of contract when it relied on the past incidents of sexual harassment as a basis to fire him.
 

 Wood had a history of sexual harassment. In 1993, Marilyn Lentz and Danielle White each sued the City of Topeka for sexual harassment allegedly committed by Wood. Each case settled, and a record was made in his personnel file. Wood was
 
 *1181
 
 suspended without pay for thirty days for each complaint.
 

 The City notified Wood in February 1997 that Lisa Munoz (“Munoz”) and Cindy Smith (“Smith”) filed complaints against him for sexual harassment. The City appointed Peg Brown, from the Human Resources Department, to investigate the complaints. Ms. Brown interviewed the plaintiff and others involved, and summarized her findings in a report. Rod Armstrong,
 
 from
 
 the Human Resources Department, also questioned the plaintiff. Around that same time, Larry Coates investigated a tenant complaint against Wood. The tenant requested that Wood not be sent back to her apartment because he brushed up against her and made lewd remarks consisting of her doing sexual favors in exchange for work done to her apartment.
 

 Wood was notified by a letter dated February 7, 1997, that he was fired because two complaints alleging sexual harassment had been filed against him and he had two sexual harassment complaints filed against him in the past. Wood filed a claim with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission. Wood also filed a grievance with the union. The union chose not to pursue Wood’s claim to arbitration, as provided in the collective bargaining agreement governing Wood’s employment. Wood did not pursue arbitration of his claim because he could not afford an attorney. Upon finding an attorney, Wood requested that the City arbitrate his claims, but the City refused because the time to request arbitration had expired. Wood then brought the present action in federal court.
 

 Other facts relevant to plaintiffs claims will be addressed under the appropriate discussion headings below.
 

 II. SUMMARY JUDGMENT STANDARD
 

 A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that “the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material.
 
 Id.
 
 at 248, 106 S.Ct. 2505. The movant has the initial burden of showing the absence of a genuine issue of material fact.
 
 Shapolia v. Los Alamos National Laboratory,
 
 992 F.2d
 
 1088,
 
 1036 (10th Cir. 1993). The movant may discharge its burden “by ‘showing’ — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party’s case.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 

 Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts.
 
 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.
 
 Celotex,
 
 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R. Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party’s case, and on which that party will bear the burden of proof.
 
 Id.
 
 at 822, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant’s case renders all other facts immaterial.
 
 Id.
 
 at 323, 106 S. Ct. 2548.
 

 
 *1182
 
 A court must view the facts in the light most favorable to the nonmovant. and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence.
 
 Byers v. City of Albuquerque,
 
 150 F.3d 1271, 1274 (10th Cir.1998). The court’s function is not to weigh the evidence or determine whether the claims have merit, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party’s favor.
 
 Anderson,
 
 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary.
 
 Id.
 
 at 250, 106 S.Ct. 2505.
 

 III. DISCUSSION
 
 [1]
 

 A. Sexual Harassment
 

 Title VII prohibits sexual harassment in the workplace.
 
 Meritor Savings Bank, FSB y. Vinson,
 
 477 U.S. 57, 63, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The plaintiff claims that the sexual harassment he experienced created a hostile work environment. The City argues that the conduct complained of is not sufficiently peryasive pr severe to create an objectively hostile work environment.
 

 In order to survive summary judgment, the plaintiff must provide evidence which shows that the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and create an abusive working environment.
 
 Meritor,
 
 477 U.S. at 67, 106 S.Ct. 2399. To determine whether the harassment was sufficiently pervasive or severe, the court must consider all the circumstances, including such things as the “frequency of the discriminating conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.”
 
 Faragher v. City of Boca Raton, 524
 
 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
 

 The facts provided by the plaintiff in support of his hostile work environment claim include:
 

 (1) Cindy Smith made a comment to plaintiff concerning a radio announcers remark of how male body parts could determine the size of a man’s penis;
 

 (2) the women’in the office used vulgar language;
 

 (3) the women in the office flipped people off;
 

 (4) Cindy Smith kissed and hugged Gerald Baldwin, whom she was dating, and rubbed her body against a coworker; and
 

 (5) Lisa Munoz hugged a co-worker.
 

 The plaintiff has provided no other examples of conduct which contribute to his hostile work environment claim.
 

 “In order to be actionable, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.”
 
 Faragher,
 
 524 U.S. at 787,118 S.Ct. 2275. The plaintiff has not shown that the actions complained of seriously impacted his work environment, and the court does not believe these actions would impact the work environment of a reasonable person. Casual
 
 *1183
 
 or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment.
 
 Hicks v. Gates Rubber Co.,
 
 833 F.2d 1406, 1414 (10th Cir.1987). The isolated incidents and general use of vulgar language complained of are insufficient to show that the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of Wood’s employment.
 

 There is simply not sufficient evidence before the court for the plaintiff to meet his burden. Therefore, the court finds summary judgment is proper on plaintiff’s claim of hostile work environment.
 

 B. Age Discrimination
 

 Wood claims that age was a motivating factor in the City’s decision to discharge him, thereby violating the Age Discrimination in Employment Act (“ADEA”), 29
 
 U.S.C.
 
 § 621,
 
 et seq.
 
 and the Kansas Age Discrimination in Employment Act (“KA-DEA”), Kan.Stat.Ann. §’ 44-1111,
 
 et seq.
 

 Plaintiff argues there is direct evidence of age discrimination. According to Wood, his supervisor, Gerald Baldwin continually made comments during the lunch hour that he would get rid of the older employees. He stated that if he had anything to do with it “the old farts would go first.” The plaintiff contends that these comments provide direct evidence that age was a determinative factor in his termination. The court disagrees. In his deposition, the plaintiff admits these comments were merely “lunch room banter.” (Depo.23) In addition, Baldwin did not have the authority to fire those under him, nor did he have any power to recommend that they be terminated. (Baldwin Depo. 67) “Age-related comments by non-decision makers are not material in showing the [employer’s] action was based on age discrimination.”
 
 Cone v. Longmont United Hosp. Ass’n,
 
 14 F.3d 526, 531 (10th Cir.1994).
 

 Having determined that the plaintiff has not produced direct evidence sufficient to show discrimination, the court must now turn to the
 
 McDonnell Douglas
 
 burden-shifting analysis to determine if summary judgment is proper on this claim.
 
 McKnight v. Kimberly Clark Corp.,
 
 149 F.3d 1125, 1128 (10th Cir.1998) (applying the
 
 McDonnell Douglas
 
 framework to ADEA claims). The Tenth Circuit has applied the following three-step analysis to claims brought under the ADEA: (1) the plaintiff must establish a prima facie case of discrimination; (2) the defendant carries the burden to produce a nondiscriminatory reason for plaintiffs termination; and (3) the plaintiff must show that the defendant’s explanation was merely a pretext.
 
 Id.
 

 A plaintiff bears the burden of establishing a pilma facie case of age discrimination by showing (1) he is “within the protected age group”; (2) he “was doing satisfactory work”; (3) he “was discharged”; and (4) his position was filled by a younger person.
 
 McKnight,
 
 149 F.3d at 1128 (citing
 
 Cone,
 
 14 F.3d at 528-530). It is undisputed that the first and third elements of the prima facie case have been established by the plaintiff. He was fifty-two years old at the time of his termination and he was terminated. Looking at the facts in the light most favorable to the plaintiff, the second element has been met. There are no job performance issues presented in the record, except the two sexual harassment complaints.
 

 Wood failed to present any evidence as to the fourth element, that his position was filled by a younger person. In fact, Wood’s response to the City’s motion for summary judgment is silent as to the City’s claim that he failed to prove this element. Under the
 
 McDonnell Douglas
 
 framework, the plaintiff bears the burden to establish a prima facie case. Because Wood failed to present evidence that his position was filled by a younger person, summary judgment is appropriate.
 

 Even if Wood established a prima facie case, he must show the City’s stated
 
 *1184
 
 reason for his termination was pretext. Pretext may be established by showing either “that a discriminatory reason more likely motivated the employer or ... that the employer’s proffered explanation is unworthy of credence.”
 
 Rea v. Martin Marietta Corp.,
 
 29 F.3d 1450, 1455 (10th Cir. 1994) (citing
 
 Texas Dep’t of Community Affairs v. Burdine,
 
 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).
 

 The City claims it fired Wood because two women complained of sexual harassment and his behavior had been the subject of two lawsuits filed against the City in the past. The City investigated the women’s complaints and found them to be credible. Plaintiff argues that because a co-worker, Silvino Gomez, told City officials that the women lied and were setting Wood up to be fired, the court should find pretext. If the City believed the women’s complaints and terminated Wood because of the complaints, such belief is not pretextual, even if the City’s belief later turned out to be erroneous.
 
 See McKnight,
 
 149 F.3d at 1129. “An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment.”
 
 Id.
 
 There is no evidence in the record that the City did not believe the women’s complaints.
 

 Plaintiff also argues that the City’s inadequate investigation of the women’s complaints is evidence of pretext. The City appointed Peg Brown (“Brown”), from the Human Resources Department, to investigate the complaints. Brown interviewed Smith, Munoz, Baldwin, Coates, and Kim Austin-Smith. When Brown interviewed Wood, she informed him that both Cindy Smith and Lisa Munoz had complained of sexual harassment. (Wood Depo. 77) She outlined her questions and his responses in a report. As discussed below, this interview was sufficient to satisfy due process. The nature of the investigation does not make the City’s proffered reason “unworthy of credence.”
 

 Plaintiff next argues that pretext is evidenced by the fact that the City fired Wood after he complained to management that older employees, including himself, were being discriminated against. However, Wood’s complaints of age discrimination occurred two to three months prior to his termination. (Wood Depo. 28) The complaints are too remote from the decision-to terminate to make the stated reason for the termination unworthy of belief.
 

 “Mere conjecture that the employer’s explanation is a pretext for intentional discrimination is not enough to overcome a motion for summary judgment.”
 
 Branson v. Price River Coal, Co.,
 
 853 F.2d 768, 772 (10th- Cir.1988). Plaintiff has not shown pretext, nor has plaintiff made a prima facie case. Therefore, summary judgment is granted as to plaintiffs age discrimination claim.
 

 C. Gender Discrimination
 

 The basis for plaintiffs gender discrimination claim is that females who committed sexual harassment were allowed to keep their jobs while plaintiff was fired for similar conduct. Title VII gender discrimination claims follow a similar analysis to age discrimination. First, plaintiff must establish his prima facie case of discrimination.
 
 EEOC v. Flasher Co.,
 
 986 F.2d 1312, 1316 (10th Cir.1992). To prove a prima facie case for gender discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was discharged for violating a work rule; and (3) similarly situated non-minority employees who violated rules of comparable seriousness were treated differently. Id. Second, defendant must produce a nondiscriminatory reason to rebut plaintiffs initial showing. Id. Finally, plaintiff must show defendant’s reason is merely a pretext for unlawful discrimination.
 
 Id.
 

 Because plaintiff is a male, he is not a member of a protected class, as required by the first element of the prima facie case. However, the prima facie case
 
 *1185
 
 is adjusted in reverse discrimination claims. When a plaintiff, who is a member of a historically favored group, alleges discrimination, he must show “background circumstances [which] support the suspicion that the defendant is that unusual employer who discriminates against the majority.”
 
 Sanchez v. Philip Morris, Inc.,
 
 992 F.2d 244, 248 (10th Cir.1993) (citing
 
 Livingston v. Roadway Express, Inc.,
 
 802 F.2d 1250, 1252 (10th Cir.1986)). The plaintiff has presented no background circumstances to show that the City is the unusual employer who discriminates against males.
 

 Plaintiff also failed to establish the third element of the prima facie case, that similarly situated females were treated differently. To be considered similarly situated, the infractions giving rise to comparison “need not involve exactly the same offenses, but need only be of comparable seriousness.”
 
 EEOC,
 
 986 F.2d at 1316. The evidence before the court does not show than the conduct of Cindy Smith and Lisa Munoz were of comparable seriousness to that of plaintiff. Neither Smith nor Munoz have had two people file sexual harassment complaints against them. Neither woman has caused the City to be sued twice for sexual harassment. Neither female has had a tenant complain about inappropriate sexual comments or request that she not return to the apartment.
 

 The only complaints against Smith and Munoz were made by Wood. He complained that Smith and Munoz used sexual and vulgar language. Wood complained that Smith hugged and kissed a co-worker who she was dating, and rubbed another co-worker. Wood also complained that Munoz rubbed a co-worker. However, none of these acts resulted in a complaint by any of the co-workers involved. Whereas, Smith alleged that Wood improperly touched her by rubbing his body against her while she was seated in a chair. Munoz alleged that Wood followed her around, got uncomfortably close, called her “baby,” and told her they should go to a hotel room that had “soft beds.” One of the women even wrote a letter and told Wood his behavior made her uncomfortable prior to filing a complaint against him. Because the plaintiff has not established that similarly situated females were treated differently, he failed to establish a pri-ma facie case.
 

 Even if a prima facie case for reverse gender discrimination had been established, plaintiff failed to show that the City’s proffered reason for his termination was pretext.
 
 [2]
 
 Therefore, the court grants defendant’s motion for summary judgment as to the gender discrimination claim.
 

 D. Retaliatory Discharge
 

 Wood claims that the City retaliated against him for engaging in protected activity under Title VII, the KAAD, ADEA, and KADA. The City argues that Wood’s retaliation claim is not properly before this court because plaintiff failed to exhaust his administrative remedies by not including retaliation in his Kansas Human Rights Commission (“KHRC”) complaint.
 

 Exhaustion of administrative remedies is a prerequisite to bringing suit under Title VII and the ADEA.
 
 Seymore v. Shawver & Sons, Inc.,
 
 111 F.3d 794, 799 (10th Cir.1997). To exhaust administrative remedies, the plaintiff must timely present his claims to the KHRC or EEOC and receive a right to sue letter. The purpose of the exhaustion requirement is two-fold: to give notice of the alleged violation to the charged party and to give the EEOC an opportunity to conciliate the claim.
 
 Ingels v. Thiokol Corp.,
 
 42 F.3d 616, 625 (10th Cir.1994).
 

 Plaintiff was terminated on February 7, 1997. He filed his KHRC complaint on August 22, 1997. Plaintiff was certainly aware of his termination and any facts supporting a retaliatory discharge
 
 *1186
 
 claim at the time he filed his KHRC complaint. However, plaintiff marked only the boxes labeled sex and age discrimination on the pre-printed KHRC complaint. He chose not to mark the box labeled retaliation. While this is not dispositive, “it certainly creates a presumption that [he] was not asserting claims represented by boxes not checked.”
 
 Schroder v. Runyon,
 
 161 F.3d 18, 1998 WL 694518 at *2 (10th Cir. Oct. 6, 1998) (unpublished opinion). Plaintiff also failed to state any facts in his complaint raising the issue of retaliation.
 
 [3]
 
 The only issues raised in the KHRC complaint are sex and age discrimination.
 

 Even if a plaintiff fails to raise a claim to the EEOC (or KHRC), the additional claim may be included in the judicial complaint if the discrimination is reasonably related to the allegations in the EEOC complaint.
 
 Brown v. Hartshorne Pub. Sch. Dist. No.
 
 1, 864 F.2d 680, 682 (10th Cir.1988). The Tenth Circuit has held that when retaliation occurs after the filing of an EEOC complaint, the subsequent retaliation is reasonably related to the previous charge.
 
 Seymore,
 
 111 F.3d at 799. However, if the retaliation occurred prior to the filing of a charge and the employee did not include a retaliation claim in the filed charge, the retaliatory act is ordinarily not reasonably related.
 
 Id.
 

 Plaintiff was fired on March 27, 1997, and did not file his administrative complaint until August 22, 1997. At the time Wood filed his complaint he knew of all facts giving rise to retaliation at that time, but failed to state them in his administrative complaint. In
 
 Seymore v. Shawver and Sons, Inc.,
 
 an employee filed an EEOC complaint, alleging race and sex discrimination, nine days after she was terminated. The employee did not specifically allege retaliation in her EEOC complaint. The Tenth Circuit held that the employee failed to exhaust her administrative remedies because she was aware at the time she filed her EEOC complaint of the facts giving rise to the retaliation claim, and that retaliation was not reasonably related to sex and age discrimination.
 
 Seymore,
 
 111 F.3d at 800. Likewise, Wood’s claim of retaliation is not reasonably related to his claims of sex and age discrimination.
 

 Plaintiff claims that he never filed the KHRC complaint submitted to the court by defendant, but instead filed a complaint with the EEOC which included retaliation. However, plaintiff has not provided the court with a copy of the EEOC complaint or provided the court with any evidence that the EEOC considered a retaliation claim.
 
 [4]
 
 In his verified complaint, plaintiff
 
 *1187
 
 states, “A charge regarding sexual discrimination and age discrimination were filed with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission on August 22, 1997 within 800 days of the commission of the unlawful acts.” The verified complaint admits that the only issues presented to the KHRC or EEOC were sexual harassment and age discrimination. Because plaintiff has not presented any evidence to suggest that either the KHRC or EEOC considered his retaliation claim, summary judgment is appropriate.
 

 Plaintiff argues that the City retaliated against him after he filed his administrative complaint by refusing to arbitrate his claim. Wood requested arbitration on July 10, 1997. On July 22, 1997, the City refused to arbitrate and informed Wood the decision to terminate him was finalized. Wood knew that the City refused to arbitrate one month prior to filing his administrative complaint on August 22, 1997. Therefore, Wood had to include his retaliation claim in his administrative complaint to exhaust Ms admiMstrative remedies.
 

 There is no evidence before the court that plaintiff exhausted his administrative remedies by giving either the EEOC or the KHRC the opportunity to conciliate the retaliation claim. Because the court concludes it does not have subject matter jurisdiction, defendant’s motion for summary judgment on plaintiffs retaliation claim is granted.
 

 E. Constitutional Violations
 

 1. Equal Protection
 

 The plaintiff claims that he was denied equal protection in violation of 42 U.S.C. § 1983 because he was subject to age discrimination, gender discrimination, and sexual harassment. All three claims fail.
 

 The Tenth Circuit recently refused to recognize an Equal Protection claim for age discrimination in employment.
 
 Migneault v. Peck,
 
 158 F.Bd 1131, 1140 (10th Cir.1998), judgment vacated, - U.S. -, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000).
 
 [5]
 
 Relying on the Fourth and Fifth Circuits, the court found that age discrimination claims brought under § 1983 were preempted by the ADEA. Id. (citing
 
 Lafleur v. Texas Dep’t of Health,
 
 126 F.3d 758, 760 (5th Cir.1997) and
 
 Zombro v. Baltimore City Police Dep’t,
 
 868 F.2d 1364, 1369 (4th Cir.1989)). The
 
 Migneault
 
 court dismissed the plaintiffs § 1983 claim, holding the ADEA provides the exclusive judicial remedy for claims of age discrimination.
 
 Id.
 
 Accordingly, summary judgment is appropriate as to plaintiffs § 1983 claim of age discrimination.
 

 Although age discrimination is not actionable, gender discrimination and sexual harassment can violate the Equal Protection Clause of the Fourteenth Amendment and trigger a § 1983 cause of action, despite the existence of a Title VII cause of action.
 
 Starrett v. Wadley,
 
 876 F.2d 808, 814 (10th Cir.1989);
 
 Jensen v. Board of County Commissioners for County of Sedgwick, Kansas,
 
 686 F.Supp. 298, 299 (D.Kan.1986) (holding a male employee may seek redress under both Title VII and 1983 in a reverse sex discrimination case).
 

 The discriminatory intent necessary to establish a § 1983 claim of gender discrimination is the same as that required to prove a Title VII claim.
 
 Randle v. City of Aurora,
 
 69 F.3d 441, 450 (10th Cir.1995);
 
 Drake v. City of Fort Collins,
 
 927 F.2d 1156, 1162 (10th Cir.1991);
 
 Thomas v. Board of Education, Unified School District No. 501, Topeka, Kansas,
 
 166 F.Bd 348 (Table), 1998 WL 892295 (10th Cir.
 
 *1188
 
 Dec. 23, 1998) (unpublished opinion) (applying the
 
 McDonnell Douglas
 
 framework to a § 1983 claim of gender discrimination). Because Wood failed to establish a prima facie case of gender discrimination under the
 
 McDonnell Douglas
 
 framework, his § 1983 claim must also fail.
 

 Unlike gender discrimination claims, courts have distinguished sexual harassment claims under Title VII and § 1983.
 
 See Redpath v. City of Overland Park,
 
 857 F.Supp. 1448, 1461-62 (D.Kan. 1994). Plaintiff failed to establish sexual harassment under Title VII, which focuses on whether the discrimination was severe and pervasive enough to alter the terms and conditions of employment.
 
 Id.
 
 Section 1983 claims focus on whether the discrimination was intentional.
 
 Id.
 
 Intentional discrimination cannot be shown by one dirty joke, consensual hugging between co-workers, and general vulgar language and gestures. Whatever standard ultimately emerges for § 1983 claims of sexual harassment, the conduct complained of by plaintiff does not rise to the level of “intentional discrimination.” The court grants summary judgment as to all plaintiffs Equal Protection claims.
 

 2. Due Process
 

 Due process requires that notice and opportunity for hearing precede a deprivation of life, liberty, or property.
 
 Mullane v. Central Hanover Bank and Trust Co.,
 
 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Plaintiff claims he was deprived of his property interest in his employment because he was never notified of the specific nature of the sexual harassment complaints against him, he was not given a meaningful opportunity to respond, and the City refused to arbitrate his claim. The court must analyze whether the City’s pre-termination and post-termination proceedings satisfied due process.
 

 A) Pre-termination
 

 Due process requires “some kind of hearing” prior to the discharge of an employee who has a constitutionally protected property interest in his employment.
 
 Cleveland Board of Education v. Loudermill,
 
 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Supreme Court has determined that “the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.”
 
 Id.
 
 at 546, 105 S.Ct. 1487. If these requirements are met, due process is satisfied because the employer has enough information to fulfill the central purpose of the pre-termination hearing, which is to serve as “an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.”
 
 Id.
 
 at 545-46, 105 S.Ct. 1487. “The pre-termination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing.”
 
 Powell v. Mikulecky,
 
 891 F.2d 1454, 1458 (10th Cir.1989). It is not designed to make a final determination as to the merits of the allegations, but simply to prevent the most basic misunderstanding and provide the employer with enough information to make an informed decision whether to terminate the employee.
 

 Plaintiff alleges that he never received notice of the specific sexual harassment complaints against him. Wood never received a written notice. However, due process does not require a written notice.
 
 Loudermill,
 
 470 U.S. at 546, 105 S.Ct. 1487 (“employee is entitled to
 
 oral or written
 
 notice of the charges”). In his deposition, Wood admits that Peg Brown, from the Human Resources Department, informed him in his interview that Cindy Smith and Lisa Munoz had filed a sexual harassment complaint against him. (Depo.77). In her report,. Ms. Brown outlines her interview with the plaintiff, including her questions and his responses. Ms. Brown asked the plaintiff the following questions:
 

 
 *1189
 
 (1) In the past year approximately
 
 %
 
 did you lean over a female THA employees chair and make body contact as you leaned over her. Later did that same female employee give you a letter stating she did not appreciate that type of behavior and that it made her uncomfortable. Did you thank that person for telling you this and comment that you had been in trouble before?;
 

 (2) On 1/17/97 did you again lean over the back of the same female THA employee and again make body contact as you leaned over her?:
 

 (3) In the past month have you told a female THA employee that you can tell the size of a man’s penis by the size of his shoes?
 

 (4) Have you hugged a female employee at work lately?:
 

 (5) Have you spoken to a THA employee and called her baby in the last couple of months?;
 

 (6) Do you frequently put your arms around female THA employees?; and
 

 (7) In the past couple of months have you asked a female THA employee to go hang out with you at the Pine Ridge Motel, and did you describe this Hotel/Motel as having among other things a soft bed and that you could get a key from Silvino Gomez?
 

 After the interview Brown read the questions and responses back to Wood and he agreed they were correct. Such questions were sufficient to provide Wood with oral notice of the nature of the complaints against him.
 
 See Powell,
 
 891 F.2d at 1459 (holding a face-to-face meeting in which a supervisor questioned employee satisfied notice requirement);
 
 Jefferies v. Wyan-dotte County Bd. of County Commissioners,
 
 979 F.Supp. 1372, 1379-78 (D.Kan. 1997) (same).
 

 Plaintiff also alleges that he was not given an opportunity to respond. In his deposition, plaintiff admitted that Ms. Brown gave him an opportunity to explain his version of what happened. (Depo.77). In her report, Ms. Brown records plaintiffs responses to her questions. Wood admitted to some of the allegations, and denied others by explaining his version of the facts. Due process does not require that there be a delay between the notice and the opportunity to respond.
 
 Powell,
 
 891 F.2d at 1459. Ms. Brown’s interview satisfied the constitutional requirements of both notice and opportunity to be heard.
 

 B) Post-Termination
 

 The court must now turn to the post-termination proceedings. The union collectively bargained to establish a grievance procedure to resolve workplace disputes. The grievance procedure has five steps, beginning with an informal request and ending with binding arbitration. Grievance procedures established by collective bargaining agreements generally satisfy an employee’s right to post-termination due process.
 
 See Hennigh v. City of Shawnee,
 
 155 F.Sd 1249, 1256 (10th Cir.1998).
 

 The plaintiff argues that he was denied due process when the City refused to arbitrate. The City argues that Wood failed to submit a timely request for arbitration. At step five in the grievance procedure, the Agreement provides, “If the grievance is still unsettled, the Union and/or the employee may within ten (10) calendar days after the reply of the Labor Relations Director, make written notice to the Labor Relations Director requesting arbitration of the matter.” Neither the Union nor Wood requested arbitration within ten day time period.
 

 As discussed under plaintiffs breach of expressed contract claim, whether the request was timely filed is an issue reserved to the arbitrator. Plaintiffs post-termination due process claim is not properly before this court. Therefore, defendant’s motion for summary judgment as to plaintiffs due process claim is granted.
 

 
 *1190
 
 3. Free Speech
 

 Plaintiff claims he was fired for exercising his right to free speech. Specifically, plaintiff claims he was fired for his complaints to management that: (1) Gerald Baldwin (“Baldwin”) threatened to terminate older male employees; and (2) Baldwin and Cindy Smith engaged in sexual conduct which endangered the health, safety and welfare of Topeka citizens housed in City facilities.
 

 “It is clearly established that a State may not discharge an employee on a basis that infringes that employee’s constitutionally protected interest in freedom of speech.”
 
 Rankin v. McPherson,
 
 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). To prevail on a claim that his dismissal violates protected speech rights, the plaintiff must show: (1) the speech was constitutionally protected, i.e., the speech related to matters of public concern and the speaker’s rights outweighed the state’s right to control its employees; (2) the speech was a substantial or the motivating factor in the state’s detrimental action.
 
 Melton v. City of Oklahoma City,
 
 879 F.2d 706, 713 (10th Cir.1989), modified on other grounds, 928 F.2d 920 (10th Cir.1991). If plaintiff makes this showing, the burden shifts to the employer to prove it would have reached the same decision in absence of the protected activity.
 
 Id.
 

 The Tenth Circuit has established the following guidelines to determine whether the speech is a matter of public concern:
 

 [T]he fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen. Speech that pertains to a public agency’s “discharging its governmental responsibilities” ordinarily will be regarded as speech on a matter of public concern. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern. In distinguishing between these two categories of speech, courts must consider the content, form, and context of a given statement, as revealed by the whole record. The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen],
 

 David v. City and County of Denver,
 
 101 F.3d 1344, 1355 (10th Cir.1996) (citations omitted).
 

 Plaintiff claims that his speech exposed misconduct of city officials which is a matter of public concern. As to the first allegation, that Baldwin threatened to terminate older male employees, the plaintiff spoke out as an employee. The court disagrees. In his deposition, the plaintiff admits these comments were merely “lunch room banter.” (Depo.23) Baldwin also did not have the authority to fire those under him, nor did he have any power to recommend that they be terminated. (Baldwin Depo. 67) Plaintiffs complaint simply involved a personnel dispute within the Topeka Housing Authority.
 

 As to the second allegation, that Baldwin repeatedly refused to respond while on call to remedy problems at various City housing units, including heat, electricity, and water, the plaintiff spoke out as a matter of public concern. Baldwin had the alarm code to access the maintenance warehouse, but refused to come open the warehouse so the maintenance workers could do emergency repairs. Wood’s speech concerns the ability of the Topeka Housing Authority “to discharge its governmental responsibilities.” Plaintiffs allegations of wrongdoing, because they sought “to bring to light actual or potential wrongdoing or breach of public trust” on the part of the City, clearly concern matters of public interest.
 
 Connick v. Myers,
 
 461 U.S. 138, 148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Accordingly, the court concludes that plaintiff is properly characterized as a “whistle-blower” based on the allegations in the complaint.
 

 
 *1191
 
 Since plaintiffs speech touched on a matter of public concern, the court must next balance “the interests of the employee in making the statement against the public employer’s interest in the effective and efficient fulfillment of its responsibilities to the public.”
 
 Mellon,
 
 879 F.2d at 713. To justify restricting plaintiffs speech, defendant must show actual disruption of services resulting from plaintiffs speech and that the disruption outweighs the plaintiffs First Amendment rights.
 
 Ramirez v. Oklahoma Dept. of Mental Health,
 
 41 F.3d 584, 594 (10th Cir.1994). Essentially, the focus is “on the effective functioning of the public employer’s enterprise.” There is no evidence that plaintiffs allegation was disruptive or impaired the ability of the City Housing Authority to function. The state interest in the “efficiency of the office” does not outweigh plaintiffs First Amendment interest in reporting possible official misconduct.
 

 The court now must consider whether the record sufficiently establishes that the protected speech was a “motivating factor” in defendant’s detrimental employment decision.
 
 Melton,
 
 879 F.2d at 713 (quoting
 
 Mt. Healthy City School Disk Bd. Of Educ. v. Doyle,
 
 429 Ú.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). In opposing the motion for summary judgment, the only evidence produced is Wood’s affidavit, which stated his unsubstantiated belief that he was fired for exercising his right to free speech. No other evidence was presented. This affidavit is not enough to withstand summary judgment, as the plaintiff must “present more than a mere scintilla of evidence to support his claim.”
 
 Hom v. Squire,
 
 81 F.3d 969, 975 (10th Cir.1996). Defendant’s motion for summary judgment as to the plaintiff’s free speech claim is granted.
 

 F. Breach of Contract and Wrongful Discharge
 

 1. Breach of Expressed Contract and Wrongful Discharge
 

 Plaintiffs employment is governed by contract # 23440 between the City of Topeka Housing Authority and the Kansas Association of Public Employees. Plaintiff claims that the City breached the contract in two ways. First, the City violated the terms of the contract by not removing the two past incidents of sexual harassment from his personnel file. Second, the City violated the contract by refusing to arbitrate, claiming the plaintiff had not followed the grievance procedure. Plaintiff also claims he was wrongfully discharged because the City violated the collective bargaining agreement when it considered the two past incidents of sexual harassment in its decision to fire him. The City argues that Wood failed to comply with the grievance procedure by not timely requesting arbitration and is therefore barred from asserting these claims in court.
 

 The court must first determine if the dispute over the content of the personnel file was subject to arbitration. The Supreme Court has established three principles governing arbitration: (1) whether a grievance is subject to arbitration is a matter of contract between the parties; (2) whether the parties agreed to arbitrate a claim is an issue for judicial determination; and (3) the courts should determine only whether the parties agreed to submit a grievance to arbitration, not the merits of the underlying claims.
 
 AT & T Technologies v. Communications Workers of America,
 
 475 U.S. 643, 648-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
 

 The court must examine the contract between Wood and the City to determine whether the dispute is subject to arbitration. The contract defines a grievance as “an alleged infraction or inconsistency in the administration and/or interpretation of this agreement.” The plaintiff bases his argument for removal of the incidents from his personnel file on the following language: “Disciplinary actions not considered serious enough for immediate termination shall be removed from an employee’s personnel file on completion of
 
 *1192
 
 two years of continuous service free from additional disciplinary actions for violations of a similar nature.” The agreement provides thát sexual harassment is considered “sufficient and just cause for immediate suspension or termination.” Plaintiff argues that because he was only suspended and not terminated, these incidents should have been removed from his personnel file. The City argues that because sexual harassment is serious enough to warrant termination, the fact that the City chose to suspend does not require that the incidents be removed from Wood’s personnel file. This dispute clearly involves an issue of contract interpretation defined as a grievance.
 

 The contract provides, “every employee must follow the grievance procedure. Failure to follow each step in the grievance procedure shall nullify the grievance and the employee shall not raise that grievance in the future.” At step five of the grievance procedure, the contract provides for binding arbitration. Because the subject matter of the dispute is subject to arbitration, the court will not look to the merits of this claim.
 
 AT & T,
 
 475 U.S. at 649, 106 S.Ct. 1415.
 

 Plaintiff also argues the City is in breach of contract for refusing to arbitrate. The City maintains it is not required to arbitrate because plaintiff did not timely comply with the grievance procedure. The contract provides, “If the grievance is still unsettled, the Union and/or the employee may within ten (10) calendar days after the reply of the Labor Relations Director, make written notice to the Labor Relations Director requesting arbitration of the matter.” Plaintiff received notice from the Labor Relations Director on March 25, 1997. Plaintiff wrote to the City requesting arbitration on July 10, 1997, citing inability to find a lawyer as his reason for delay. The City promptly denied Wood’s request to arbitrate.
 

 Plaintiff claims that the “may within ten calendar days” allows him to provide the notice either during or after the ten-day period. Wood argues that the use of the word “may” is ambiguous, and the intent of the parties is a material issue of fact for the jury. However, as previously discussed, a dispute over contract interpretation is a grievance which the parties are contractually bound to arbitrate. There is no evidence that the parties intended to exclude procedural disputes from arbitration.
 
 See Denhardt v. Trailways, Inc.,
 
 767 F.2d 687, 689 (10th Cir.1985). Therefore, the parties must arbitrate the issue of timely compliance.
 

 In addition to the contract terms, Supreme Court precedent requires that the parties submit the issue of timely compliance to arbitration. Once a court determines the parties are obligated to submit the underlying subject matter to arbitration, any procedural questions growing out of the dispute and bearing on its final disposition should be left to the arbitrator.
 
 John Wiley & Sons v. Livingston,
 
 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Procedural arbitrability includes such questions as “whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate.”
 
 Id.
 

 Following
 
 Wiley,
 
 the Tenth Circuit has held that the issue of timely compliance with grievance procedures is a procedural issue reserved for the arbitrator and not the court.
 
 See Denhardt,
 
 767 F.2d at 690 (granting employer’s motion for summary judgment because employee’s sole remedy was to proceed to arbitration on both the substantive and procedural aspects of the claim);
 
 International Union, United Auto., Aerospace and Agr. Implement Workers of America (UAW) v. Folding Carrier Corp.,
 
 422 F.2d 47, 49 (10th Cir. 1970) (holding whether grievance procedure was complied with is an issue to be determined by the arbitrator).'
 
 See also Oil, Chem., and Atomic Workers’ Int’l Un
 
 
 *1193
 

 ion, Local 4-447 v. Chevron Chem. Co.,
 
 815 F.2d 338, 341 (5th Cir.1987) (holding because the wrongful discharge claim is arbitrable, whether the plaintiff met the fifteen-day deadline is also arbitrable);
 
 Auto., Petroleum and Allied Indus. Employees Union, Local No. 618, v. Town and Country Ford, Inc.,
 
 709 F.2d 509 (8th Cir.1983) (holding union compliance with the five-day notice period was an issue reserved for arbitrator). Because it is clear that the parties were to submit the issue of whether the past incidents of sexual harassment should have been removed from the personnel file to arbitration, the coimt must also reserve the issue of timely compliance for the arbitrator.
 

 Both issues of timely compliance with grievance procedures and the use of past sexual harassment complaints as a basis for discharge are subjects committed by the parties to arbitration. Plaintiffs claims are not properly before this court. Therefore, summary judgment is granted on plaintiffs breach of express contract and wrongful discharge claims.
 

 2. Breach of Implied Contract
 

 Plaintiff claims breach of an implied employment contract because the City failed to follow written policies concerning complaint investigation and termination procedures which were stated in the employee handbook.
 

 First, the City argues that summary judgment is proper because Wood did not assert a breach of implied contract claim in his complaint. The amended complaint provides that the City failed “to properly investigate the allegations against the plaintiff and the reasons for his termination under the requirements of all applicable rules, regulations and policies of the City.” The amended complaint also provides, “the plaintiffs injuries were specifically caused by the City’s execution and/or failure to execute official policies and/or customs which are included in the Agreement and any and all personnel handbooks.” The court finds this language sufficient to put the City on notice of an implied contract claim.
 

 Defendant next argues that Wood failed to present any evidence of the City’s intent to be contractually bound by the employee handbook. Whether an implied contract exists depends upon the intent of the parties. A party’s intent is determined by the totality of the circumstances and is normally a question of fact for the jury.
 
 Allegri v. Providence-St. Margaret Health Ctr.,
 
 9 Kan.App.2d 659, 684 P.2d 1031, 1035 (1984). Although intent is usually a question of fact reserved for the jury, summary judgment is appropriate when there is no evidence presented sufficient to create a material issue of fact as to a party’s intent to create an implied contract.
 
 See Farthing v. City of Shawnee,
 
 39 F.3d 1131, 1138 (10th Cir.1994).
 

 Under Kansas law, an employment manual is simply a unilateral expression of a company policy and is not a bargained for exchange necessary to create a contract.
 
 Conaway v. Smith,
 
 853 F.2d 789, 794 (10th Cir.1988). “There is a distinct difference between a policy which a given employer might adopt and sincerely intend to follow, and normally does follow, and a binding contractual duty.”
 
 Berry v. General Motors Corp.,
 
 838 F.Supp. 1479, 1492 (D.Kan.1993). Employers may adopt policies to clarify expectations, establish uniformity or bring a sense of fairness to the employment relationship without ever intending to be contractually bound by such policies.
 
 Id.
 
 While an employment manual is probative of an implied contract, it is not determinative.
 
 Id.
 

 An employee handbook alone is insufficient to establish the intent of an employer to create an implied employment contract.
 
 See Brown v. United Methodist Homes For the Aged,
 
 249 Kan. 124, 815 P.2d 72, 83 (1991) (employment manual alone did not establish an implied contract);
 
 Wulf v. City of Wichita,
 
 644 F.Supp. 1211, 1222 (D.Kan.1986),
 
 rev’d on other grounds,
 
 883 F.2d 842 (10th Cir.
 
 *1194
 
 1989) (same). Courts have granted summary judgment when an employee handbook is the only evidence of an employer’s intent.
 
 See Farthing,
 
 39 F.3d at 1138 (upholding award of summary judgment where plaintiff did not present any evidence “beyond the terms of the personnel manual”);
 
 Bullock v. Dillard Dep’t Stores, Inc.,
 
 No. Civ. A. 92-2474-0, 1992 WL 350229 (D.Kan. Oct. 20, 1992) (unpublished opinion) (holding personnel manual alone was insufficient to raise a genuine issue of material fact).
 

 The only evidence of the City’s intent presented by plaintiff is the existence of the employee handbook. The plaintiff does not point to any language in the handbook demonstrating the City’s intent to be legally bound to its terms. Nor does the plaintiff present any conduct or statements by city officials which would support his position that the handbook was a contract. The plaintiffs sole argument is that because the collective bargaining agreement and employee handbook contain the same termination procedure, “both the express and implied contracts evidence the same intent of the City.” The fact that the City has similar language in its collective bargaining agreement does not raise the employee handbook to the level of a contract. A party must manifest an objective intent to be bound to the contract in question. The manifestation of assent to one contract does not legally bind a party to other agreements entered into by the party which contain similar language.
 

 The existence of the employee handbook is not sufficient to establish an implied contract. Because the facts presented to the court are insufficient to raise a material issue of fact for the jury, defendant’s motion for summary judgment as to the implied contract claim is granted.
 

 G. Intentional Infliction of Emotional Distress
 

 The tort of intentional infliction of emotional distress (“IIED”), also known as outrage, is well recognized by the Kansas Courts. Kansas adopted the Restatement (Second) of Torts § 46 which provides that “[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to another results from it, for such bodily harm.”
 
 Roberts v. Saylor,
 
 230 Kan. 289, 637 P.2d 1175, 1179 (1981). There are two threshold requirements that must be met before a claim of IIED can proceed to a jury:
 

 Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) whether the defendant’s conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.
 

 Id.
 
 To support an IIED claim, the alleged conduct must be “atrocious and utterly intolerable in a civilized society.”
 
 Taiwo v. Vu,
 
 249 Kan. 585, 822 P.2d 1024, 1029 (1991).
 

 “Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims.”
 
 Bolden v. PRC Inc.,
 
 43 F.3d 545, 554 (10th Cir.1994). “ ‘Mere insults, indignities, threats, annoyances, petty expressions, or other trivialities’ do not rise to the necessary level of outrageous conduct.”
 
 Linde-muth v. Goodyear Tire & Rubber Co.,
 
 19 Kan.App.2d 95, 864 P.2d 744, 749 (1993) (quoting
 
 Roberts,
 
 637 P.2d at 1179). “The overwhelming majority of Kansas cases have held in favor of defendants on the outrage issue, finding that the alleged conduct was insufficiently ‘outrageous’ to support the cause of action.”
 
 Id.
 

 Plaintiffs response is silent as to the IIED claim. In order to survive a motion for summary judgment, the plaintiff must
 
 *1195
 
 go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial.
 
 Celotex, 477
 
 U.S. at 324, 106 S.Ct. 2548. The court has reviewed the record to determine if “dormant” facts exist to support plaintiffs IIED claim.
 

 Plaintiff appears to claim that the following conduct by the City was extreme and outrageous: (1) the City allegedly breached Wood’s employment contract when it based its decision to fire Wood on two past sexual harassment charges; (2) P>aldwin told Wood he would be fired if he had anything to do with it; (3) Baldwin made comments about age and “old farts” being the first to go; (4) the women in the office “flipped people off” and used vulgar language; (5) Baldwin and Cindy Smith, who were dating, hugged and kissed each other at the office; (6) Lisa Munoz hugged a co-worker at the office; and (7) Smith told a joke about the size of a man’s penis.
 

 None of the conduct complained of can be characterized as “atrocious and utterly intolerable in a civilized society” as is required under Kansas law.
 
 See Taiwo,
 
 822 P.2d at 1029. “Members of the public are necessarily expected and required to be hardened to a certain amount of rough language and to occasional acts and words that are definitely inconsiderate and unkind.”
 
 Anspach v. Tomkins Industries, Inc.,
 
 817 F.Supp. 1499, 1506 (D.Kan.1993). The conduct complained of does not rise to the level of extreme and outrageous.
 

 In addition, Wood has not produced evidence that he suffered severe emotional distress. The only evidence of distress is found in Wood’s deposition in which he claims to have suffered depression as a result of the City’s conduct. However, there is no evidence that he was hospitalized, saw' a doctor, or took medication. There is also no evidence of any problems sleeping, eating, or weight fluctuations. The mere claim of depression is insufficient to rise to the level of severe emotional distress.
 

 Plaintiff has failed to meet the two threshold requirements of IIED. Therefore, defendant’s motion for summary judgment as to the claim of intentional infliction of emotional distress is granted.
 

 H. Negligence
 

 Wood asserts a claim against the City for negligent supervision and retention of Gerald Baldwin. Wood argues that the City knew Baldwin had a dangerous propensity and posed an undue risk of harm to others. However, Kansas law does not authorize claims for negligent supervision and retention in typical employment-related litigation.
 
 Polson v. Davis,
 
 895 F.2d 705, 710 (10th Cir.1990);
 
 Farris v. Board of County Com’rs of Wyandotte County,
 
 924 F.Supp. 1041 (D.Kan.1996).
 

 Plaintiff cites
 
 Kansas State Bank & Trust Co. v. Specialized Transp. Services,
 
 Inc., 249 Kan. 348, 819 P.2d 587 (1991), to support his argument that his negligence claim should be allowed. In
 
 Kansas State Bank,
 
 a six-year-old student was sexually molested by a school bus driver, and the student sued the bus driver’s employer. The court allowed the negligent retention and supervision claim.
 
 Kansas Slate Bank
 
 is easily distinguished because it involves an action brought by a member of the public rather than an employee. Several sister courts have rejected plaintiffs suggestion that
 
 Kansas State Bank
 
 provides for a negligent supervision claim in employment-related litigation.
 
 See Maus v. Belger Cartage Service,
 
 Inc., No. 96-1257-JTM, 1996 WL 748056 (D.Kan. Dec. 27, 1996) (unpublished decision) (stating “plaintiffs argument has been rejected by all Kansas district court decisions addressing the issue”);
 
 Witt v. Roadway Express,
 
 880 F.Supp. 1455, 1464-65 (D.Kan.1995),
 
 rev’d on other grounds,
 
 136 F.3d 1424 (10th Cir.1998);
 
 Anspach,
 
 817 F.Supp. at 1519-20.
 

 
 *1196
 
 Plaintiff cites no other cases to support his argument that the court should allow his negligent supervision and retention claim. Nor has plaintiff raised facts to show his claim is “atypical.” Because Kansas law does not recognize a negligent supervision and retention claim in employment-related litigation, defendant’s motion for summary judgment is granted.
 

 I. Loss of Consortium
 

 Plaintiff claims damages for loss of consortium, and the City has moved for summary judgment as to this “claim.” However, damages alone do not create a cause of action.
 
 Schmeck v. City of Shawnee,
 
 647 P.2d 1263, 1265 (Kan.1982). “The cause of action is the wrong done, not the measure of compensation for it, or the character of relief sought. A cause of action arises from a manifestation of a right or violation of an obligation or duty.”
 
 Id.
 

 Loss of consortium is not an independent cause of action. Damages based upon loss of consortium are recoverable only if the plaintiff can prove an underlying cause of action. Because the court is granting defendant’s motion for summary judgment on the underlying causes of action which would provide for loss of consortium damages, the court grants defendant’s motion for summary judgment as to the loss of consortium “claim.”
 

 IV. CONCLUSION
 

 For the above-stated reasons, the court finds that summary judgment is proper on each of plaintiffs claims.
 

 IT IS THEREFORE BY THE COURT ORDERED that Defendant’s Motion for Summary Judgment (Doc. 46) is granted.
 

 [1]
 

 . The court notes at the outset that plaintiffs response brief both fails to address issues raised by defendant and also contains numerous factual arguments that are not properly supported by reference to the record. Without a specific reference, the court is under no obligation to “search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.”
 
 Thomas v. Wichita Coca-Cola Bottling Co.,
 
 968 F.2d 1022, 1025 (10th Cir.),
 
 cert. denied,
 
 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992);
 
 accord, United States
 
 v.
 
 Dunkel,
 
 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.”). Nonetheless, out of an abundance of caution, the court has reviewed the record when necessary in an effort to resolve any questions in favor of plaintiff as the nonmoving party.
 

 [2]
 

 . See discussion on age discrimination claim.
 

 [3]
 

 . The plaintiff's Human Rights Commission complaint slates the sex and age discrimination claims are based on the following facts:
 

 I. I began my employment with the Respondent on or about July 25, 1972, and last held the position of Maintenance III.
 

 A. On or about February 7, 1997, I was terminated after being falsely accused of sexual harassment by two (2) female coworkers. Both of these individuals, along with the supervisor who terminated me, were considerably younger than I.
 

 II. I hereby charge City of Topeka, Topeka Housing Authority and its representatives with a violation of the Kansas Act Against Discrimination. I was singled out for adverse differential treatment compared to similarly situated younger female employees in that I was falsely accused of sexual harassment and was terminated because of my age, 52, and my sex, male.
 

 [4]
 

 . Plaintiff appears to try to blame the EEOC for his liability to produce evidence that his EEOC complaint alleged retaliation. In his sur-response, plaintiff states “the EEOC consistently destroys all of the documents in cases filed before its agency once the claimant files his federal law suit.... The Court should not penalize the plaintiff for information that he is prohibited from obtaining from the EEOC because of its prejudicial practices of destroying its files.” This argument has no merit. The defendant can not withstand a motion for summary judgment by using an fictional EEOC complaint. If plaintiff cannot obtain a copy of the EEOC complaint (of which any prudent attorney would make a copy of), he must come forward with other evidence demonstrating that the EEOC considered his retaliation claim.
 

 [5]
 

 . The Supreme Court, vacated the Tenth Circuit opinion, relying on its reasoning in
 
 Kimel v. Florida Bd. Of
 
 Regents,---U.S.--, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).
 
 In Kimel,
 
 the Court held that the ADEA did not validly abrogate the states’ Eleventh Amendment immunity from suit, by private individuals and the abrogation exceeded Congress's authority. The Court did not discuss whether the ADEA was the exclusive judicial remedy, preempting Equal Protection claims of age discrimination.